## COOK *against* LITCHFIELD.

Where four notes alike in all respects, except in the times of payment, which were respectively nine, ten, eleven and twelve months from the common date, were severally protested on the day when each became due, and notice of protest in each case, dated on the day of the protest, was duly mailed, addressed to the endorser at his place of residence, all the notices being in precisely the same words, with the difference of date, except that in two of them the amount of interest was stated in the margin: *Held,* that the notice of protest of the first note was sufficient, no other note to which the notice was applicable having at that time become due; but that the notice was insufficient to charge the endorser as to the other notes, there being, at the time when each became due, two or more notes in existence, to which the terms of the notice would equally apply.

It appeared that the notes, although dated in Michigan, were first negotiated, by the maker, in New-York (where they were payable), with the defendant's endorsement upon them. It was *Held*, therefore, that the defendant must be regarded as an accommodation endorser, and the contract of endorsement as made in New-York, and governed by the laws of that state.

Notice that a note was on the day when it fell due " duly protested for non-payment," is sufficient to charge the endorser if it be good in other respects.

APPEAL from a judgment of the superior court of the city of New-York at general term (5 *Sandf S. C. R.*, 330), affirming a judgment in favor of the plaintiff at special term. The action was brought against the defendant as endorser of four promissory notes. One of these notes was as follows :

" $740.                    DETROIT, *April 2d*, 1849.

" Nine months after date I promise to pay to the order of E. C. Litchfield, Esq., at the Bank of New-York in the city of New-York, seven hundred and forty dollars, value received, with interest.

" J. L. CAREW."

The other three notes were precisely like the above, except that the times of payment were ten, eleven and twelve months after date respectively. The notes, after endorsement by Litchfield, were sent by mail by the maker to his agents in New-York, who delivered them to G. W. Ryckman, by whom they were endorsed and transferred to the plaintiff.

Upon the trial, the above facts were proved, together with the due presentation and non-payment of each note at its maturity. It was also shown that upon the next business day after each demand and refusal of payment, a notary public addressed a notice of protest to the defendant at Detroit, his place of residence, and deposited it in the New-York post-office. The first of these notices was as follows :

Cook *against* Litchfield.

" NEW-YORK, *Jan. 5th,* 1850.

" $740, and interest.

" Please to take notice that a promissory note, made by J. L. Carew, for $740, with interest, dated April 2d, 1849, endorsed by you, was, on the day that the same became due, duly protested for non-payment, and that the holders look to you for the payment thereof."

(signed by the notary);

and the other notices were in the same words, with the difference of date, except that in two of them the amount of interest was stated in the margin. Evidence was also given showing that by the law of the State of Michigan, as established by the courts of that state, a notice of protest to be effectual must show that the note had been duly presented for payment, and payment refused. Upon these facts the court directed the jury to find a general verdict for the plaintiff for the amount of the four notes and interest.

*Charles Tracy* for the appellant.

I. The notices sent to the defendant were not sufficient to charge him as endorser, according to the rules of law prevailing in the State of New-York. 1. The notice must contain sufficient facts to inform the endorser affirmatively, that the particular note referred to has been presented at the proper time and place, and dishonored. It is not sufficient if it merely puts him on inquiry. It must positively identify the note, and show that he is charged as its endorser. (*Cayuga Co. Bk.* v. *Warden,* 1 *Comst.,* 413 ; *Wynn* v. *Alden,* 4 *Denio,* 163 ; *Ransom* v. *Mack,* 2 *Hill,* 593 ; *Remer* v. *Downer,* 23 *Wend.,* 626 ; 25 *Wend.,* 277, *S. C.*) 2. Where there are several notes made by the same maker, and endorsed by the same endorser, it is necessary that the notice should distinguish which note is intended. (*Cayuga Co. Bk.* v. *Warden, supra* ; *Mills* v. *Bank of United States,*

Cook *against* Litchfield.

11 *Wheat.*, 431; *Stockman* v. *Parr*, 11 *Mees. & Wels.*, 809, *Shelton* v. *Braithwaite*, 7 *id.*, 436; *Remer* v. *Downer, supra.*) 3. In this case, there were four notes similar except in the number of months they were to run, and neither of the notices makes any distinction between the four. Either notice might be true, without the note then maturing being properly dishonored. 4. This is more palpable in the case of the second, third, and fourth notices, each of which would be true if the first note alone had been dishonored. There is a total want of identification or description. 5. This want of description is contrary to the usual course of business. The blank in the printed notice is intended and commonly used for inserting a description of the note, stating how long it had to run, and when and where it would be payable. This blank was not filled up. 6. The notices were also insufficient in other respects. They did not show when or how or where the notes were presented or dishonored. (*Cayuga Co. Bank* v. *Warden, supra; Wynn* v. *Alden, supra.*)

II. The contract of endorsement was made in Michigan, and must be interpreted and performed according to the law prevailing there. 1. The notes were endorsed at Detroit. 2. Notwithstanding the notes were made payable in New-York, the contract of the endorser was made in Detroit, and is governed by the laws of Michigan. (1.) A contract is interpreted and construed according to the law of the place where it was made. The *lex loci contractus* enters into the contract itself and becomes a part of it. "*In contractibus veniunt ea quæ sunt moris et consuetudinis in regione in quâ contrahitur.*" (5 *Œuvres Completes de Poth.*, 318; *Chit. on Bills*, 507: *Story on Promissory Notes*, 404, § 339; *Cooper* v. *Earl of Waldegrave*, 2 *Beav.*, 282; *Trimbey* v. *Vignier*, 1 *Bing. N. C.*, 151; *Anstruther* v. *Adair*, 2 *Myl. & Keene*, 513; *De La Vega* v. *Vianna*, 1 *Barn. & Adol.*, 284.) (2.) The particular rule, that a contract which by its terms is to be performed at a place different from that at which

it was made, is governed by the law of the place of performance, is an exception to the general rule, and ought not to be extended. (*Poth.*, *pt.* 1, *ch.* 5, § 5, *No.* 155, *above cited; Carroll* v. *Upton,* 2 *Sandf. S. C. R.,* 171.) (3.) In the case of a promissory note payable in the body at a particular place, the adoption of the law of that place is limited to the obligation of the maker alone. The contract of the indorser is a new and independent contract, and is not to be performed at any particular place. It is, therefore, not within the exception above mentioned. The endorser simply agrees to pay the amount in a certain event, but not at any particular place. The locality mentioned in the body of the note is not material to the endorser, except as a limitation of the maker's promise, on the breach of which the endorser may become liable to pay. Such promise of the maker must be wholly broken, and the holder's rights converted into a simple and unconditional demand for money over due, before the holder can even give a notice of dishonor to the endorser. The endorser is not rendered an absolute debtor to the holder until after the notice is given; and after that time the holder has no right to require payment from the endorser at the place named in the note, nor is he bound to keep the note there to receive payment. (4.) The endorser's contract, therefore, falls within the general rule, that the place where the contract is made, supplies the law which is to interpret it and fix its meaning and effect. The endorsement of the note is a contract of such character, terms and conditions as the laws of the place where the endorsement is made provide and determine. (*Hicks* v. *Brown,* 12 *John.,* 142; *Aymar* v. *Sheldon,* 12 *Wend.,* 443, 445; *Allen* v. *Merchants' Bank,* 22 *id.,* 215; *Bank of Rochester* v. *Gray,* 2 *Hill,* 227; *Story on Promissory Notes,* 404, 406, 3, § 339; *Lowry's Administrator* v. *Western Bank of Georgia,* 7 *Ala. R.,* 120; *Dunn* v. *Adams,* 1 *id.,* 527; *Cox* v. *Adams,* 2 *Kelley,* 158; *Dundas* v. *Bowler,* 3 *McLean,* 397; *Hatcher* v. *McMorine,* 4

*Dev.*, 122; *Dow* v. *Rowell*, 12 *N. Hamp.*, 49; *Yeatman* v. *Cullen*, 5 *Blackf.*, 240; *Holbrook* v. *Vibbard*, 2 *Scam.*, 465; *Slacum* v. *Pomery*, 6 *Cranch*, 221.) 3. The court below erred in supposing that the manual possession of the endorsed note by the maker at Detroit, and his transmitting it to New-York to be passed there, changed the nature of the endorser's contract. (1.) The endorsement may have been made for a consideration received from the maker, and not for his mere accommodation; and the maker may have acquired a fixed right in the endorsement before he sent it away. (2.) The endorser's contract was perfect from the moment he wrote his name on the back of the note, and no subsequent acts of the maker could change it. A negotiation of the note in a country where no notice is necessary to charge an endorser, would not take away the condition which the law of Michigan put into the contract at the moment of signing. (3.) The delivery of the endorsement out of the hands of the endorser, was the completion of his undertaking as to its terms and conditions. What followed that act might affect the ownership of the paper, but never could reach back and modify the elements of the contract itself. By sending forth this endorsement, he offers to assume the obligations of an endorser according to the laws of Michigan; and no subsequent action of other persons in other places can involve him in any greater or different undertaking. (4.) The transmission of the note by the maker, after endorsement, to another state, and its delivery there, have no influence on the contract itself, but leave it to be governed by the law of the place where the paper was originally written and signed. (*Jacks* v. *Nichols*, 3 *Sandf. Ch. R.*, 313; 5 *Barb.*, 38, *S. C.*; 1 *Seld.*, 178, *S. C.*; *Lowry's Administrator* v. *Western Bank of Georgia*, 7 *Ala. R.*, 120.) 4. The contract of the endorser not being written out, is to be supplied and expressed according to the *lex loci contractus.* An endorsement in Michigan, therefore, is to be filled up with a promise by the endorser to

pay the note on condition that it is duly presented at maturity and payment demanded, and is then dishonored by the maker, and that a notice describing the note, and stating that such presentment and demand have been made at the proper time and place, and the note was dishonored by the maker, is sent to the endorser. It cannot be filled up with a condition that the notice, instead of stating such facts, may merely state that the note was " duly protested for non-payment." (*Hall* v. *Newcomb*, 7 *Hill*, 416.)

   *N. Hill, Jr.*, for the respondent.

I. The notices of dishonor were sufficient by the law of New-York. 1. It was enough to state that the notes were protested. (*Coddington* v. *Davis*, 3 *Denio*, 25; *Cayuga Co. Bank* v. *Warden*, 1 *Comst.*, 414.) 2. There was no misdescription, and there was a sufficient description to identify each note as it became due. 3. The sufficiency of the notices upon their face is a question of law. (*Ransom* v. *Mack*, 2 *Hill*, 587; *Dole* v. *Gold.* 5 *Barb.*, 490 ; *McKnight* v. *Lewis*, 5 *Barb.*, 685 ; *Wynn* v. *Alden*, 4 *Denio*, 164; *Cayuga Co. Bank* v. *Warden*, 1 *Comst.*, 414.)

II. The decisions in New-York should control as to the sufficiency of the notice, because, 1. There is no decision nor principle requiring that the form of the notice to charge an endorser, is to be governed by the law of the place where the endorsement was consummated. (*Story on Bills*, §§ 391, 156, 157, 176, 177, *and note* 285 ; *Carroll* v. *Upton*, 2 *Sandf. S. C. R.*, 172.) 2. This was in truth a New-York contract, because, (1.) The contract on which the notes were to be delivered, was made and to be performed here, and was actually performed here. (2.) The endorsement was delivered here, and never became effective as an endorsement until such delivery. (3.) The money was payable, and the endorsed contract was to be performed here. (4.) So the condition, upon performing which the endorser became bound, viz : the

use of due diligence to give him notice of the dishonor of the notes, was to be performed here by the holder. (*Pothier on Obl.*, *pt.* 1, *ch.* 1, § 1, *art.* 2; *Grotius*, *lib.* 2, *ch.* 2; *Chitty on Cont.*, 12 (5 *Am.*, *from 3d London ed.*); *Routledge* v. *Grant*, 15 *E. C. L.*, 99; *Mactier* v. *Frith*, 6 *Wend.*, 103, 113, 114, 139; *Cox* v. *Troy*, 7 *E. C. L.*, 163; *Cox* v. *The United States*, 6 *Peters*, 172; *Adams* v. *Jones*, 40 *E. C. L.*, 94; *Duncan* v. *United States*, 7 *Peters*, 448, 449; *Bank of Augusta* v. *Earle*, 13 *id.*, 532, *per Sergeant arguendo.*)

RUGGLES, Ch. J.   One of the indispensible requisites of the notice to be given to the endorser of the dishonor of a note, is, that it should either expressly, or by just and natural implication, contain in substance a true description of the note, so as to identify it to the mind of the endorser.   No particular form of words is necessary to be used for this purpose.   The object of the notice is to put the endorser in possession of the material facts on which his own liability is founded, so that he may be enabled to take the necessary measures for his own security or indemnity against those who are liable over to him. (*Story on Prom. Notes*, §§ 348, 349.)

A notice which is barely enough to put the endorser upon inquiry is not sufficient.   The note should be sufficiently described to enable the party to know what note it is. (*Remer* v. *Downer*, 23 *Wend.*, 626.)   The notice must explicitly state what the note is, and must not be calculated in any way to mislead the party to whom it may be given. (*Chitty on Bills*, 501; *ed. of* 1836.)   The notice must not misdescribe the instrument so that the defendant may *perhaps* be led to confound it with some other. (*Byles on Bills*, 204.)

In the present case there are four notes of the same date, each for $740, payable to the same person, or order, at the same place, and each payable with interest from date.   They are, however, payable at different times; that is to say, one in nine months, one in ten, one in eleven, and one in twelve months from date.   It is in the time of payment only that

either note is to be distinguished by description from the others. The notes were all dishonored and protested, and the question is, whether the notices of protest contained a sufficient description of the note to which each was intended to apply. If they did they were sufficient, otherwise not. The first notice informed the defendant that a promissory note made by J. L. Carew for $740, with interest, dated April 2d, 1849, and endorsed by him, was on the day the same became due, duly protested for nonpayment. Only one note of the four had fallen due at the date of the notice. It spoke of a note which had fallen due, the date and amount of which were correctly described, and must therefore have related and applied to that note and to that only. The notice pointed out with sufficient certainty which of the four notes had then been dishonored, and distinguished it from the three others by reference to the time of its maturity. It was the only mode in fact in which it could be distinguished from the others of the series. It might have been more plainly expressed by stating the time it had to run, or by naming the day when it became due; but it was sufficient that it clearly appeared by the notice that it became due before or on the day the notice bore date. With respect to the note payable at ten months the case stands on different grounds. For the sake of brevity I shall speak of the note which first fell due, as the first of the series, and of that which became due next afterwards as the second, and so on of the two others.

The notice supposed by the plaintiff to apply to the second note, is an exact copy of that which was given upon the dishonor of the first, except in two particulars, to wit, in its date, and in the memorandum which specifies that the interest amounted to $43.60. The notice speaks of the protest of a note which had at the date of the notice become due. It could not therefore be understood to apply either to the third or the fourth note of the series, because neither of those notes had come to maturity. But the description contained in it was applicable by its terms to either one of the

two first notes, and as strictly applicable to the one as to the other. There is nothing on the face of the notice which enabled the endorser to know which of the first two notes the notice was intended for. The second notice was dated on the day when the second note became due; but it does not state that the note mentioned in it was the note which became due on that day. It stated only that the note mentioned in it was duly protested on the day when it fell due; and this was true as well in regard to the first as to the second note. The notice therefore did not inform the endorser which of the two notes it applied to. The date of the notice was no part of the description of the dishonored note, and notwithstanding the date of the notice, the description applied as well to the one note as to the other. As to the memorandum at the head of the notice of the interest due on the note the same difficulty exists. The two first notes being for the same amount, of the same date, and both bearing interest from date, the amount of interest due on each, would at the date of the notice be precisely the same. The endorser therefore could not have made out from that memorandum which of the two notes the notice was intended to apply to. So that any fact and circumstance contained in the second notice is applicable to the first note, and would have been perfectly true, if the second note had never been presented for payment or if it had been regularly paid at maturity. The second notice was in everything except its date a duplicate of the first, and if the first notice was applicable to the first note, the second is equally so.

But it is said that the defendant could not have been misled by the defect in the notice, because it bore date on the day when the second note became due, and he had a month previously received notice of the dishonor of the first note; and that knowing when the second note fell due he must therefore have understood the second notice to refer to the second note. This is undoubtedly the strongest view of the case in favor of the plaintiff. But it is not strong enough to

sustain his demand without violating a settled and salutary principle of law. " The description of the note should be sufficiently definite to enable the endorser to know to what one in particular the notice applies; for an endorser may have endorsed many notes of very different dates, sums and times of payment, and payable to different persons, so that he may be ignorant, unless the description in the notice is special, to which it properly applies or which it designates." (*Story on Prom. Notes*, § 349.) In the present case the defendant endorsed four notes which were alike in all respects, excepting in regard to the time of payment; and yet the notices omitted to describe them with reference to that important particular, by which only they could be distinguished one from the other.

In determining whether the description of the note or bill is sufficient, the circumstances of the case and the defendant's knowledge of those circumstances may be taken into consideration; and therefore where the notice to the drawer of a bill of exchange, was that his draft on A. B. was dishonored, the notice was adjudged to be sufficient until it was shown that there was another bill drawn by the defendant on A. B. for which the one in question might be mistaken. But PARK, Baron, said: " If there was another bill answering the same description, then the notice would have been uncertain." The present is precisely the case supposed by Baron PARK. (7 *Mees. & Wels.*, 437.)

There are several other cases in which an imperfect or erroneous description of a note or bill has been held sufficient on the same ground, that the party could not be misled or mistaken in regard to the meaning of the notice and the identity of the bill, because there was only one instrument of the kind to which the notice could possibly relate. But all these cases show that where there are more than one the the notice is bad for uncertainty. (*Mills* v. *Bank of U. S.*, 11 *Wheat.*, 436; *Stockman* v. *Parr*, 11 *Mees.*

*&* *Wels.*, 809; *Cayuga Bank* v. *Warden*, 1 *Comst.*, 415; *Bank of Alexandria* v. *Swann*, 9 *Peters*, 33.)

The second notice was insufficient to charge the defendant as endorser of the second note for the reasons above given; and the third and fourth notices were also insufficient for the same reasons.

In cases like the present, where there are several notes, it is the notary's duty to describe the protested note by stating the circumstance which distinguishes that note from the others. For example, if there be several notes agreeing in date and amount, but differing in regard to the time of payment, the notice should state when the protested note became due; or if they agree in date and time of maturity but differ in amount, the amount of the protested note should be stated. If they agree in amount and time of maturity but differ in date, the date of the protested note should be stated. In the present case the date and amount (which are alike in all the notes) are stated, but the time when the notes fell due (in which they differed) is not stated. Nor does the notice in either case state when the protest mentioned in it was made, except by reference to the time when the note became due, and that time is not specified.

The defendant endorsed the notes for the accommodation of the maker. This appears from the fact that the notes came from the possession of the maker and not of the endorser, and were first negotiated in New-York, and apparently for the benefit of Carew, the maker. So long as they remained in Carew's hands there was no liability on the part of the endorser. The endorser's contract, therefore, must be regarded as having been made in New-York where the notes were delivered to Ryckman and the endorsement first became effective. The law of Michigan has, therefore, no application to the case. The contract having been made in New-York, the law of New-York governs the case with respect to the sufficiency of the notice.

Notice that a note was on the day when it became due *duly protested for non-payment*, is sufficient to charge the endorser if it be good in other respects. Such notice implies that the note described in it was presented for payment and dishonored. (*Coddington* v. *Davis*, 1 *Comst.*, 190.)

MASON and TAGGART, Js., dissented from the foregoing opinion.

MORSE, J., being related to one of the parties, gave no opinion.

All the other judges concurring,

Judgment reversed and new trial ordered.