MOTT (UNITED STATES v.). See Case No. 15,826.

## Case No. 9,883.

### MOTT v. WRIGHT.

[4 Biss. 53.] [2]

Circuit Court, D. Indiana. Nov. Term, 1865.

NOTES—LAW MERCHANT—RULE IN INDIANA—IN- DORSER—LEX LOCI—DELIVERY.

1. By the law of Indiana, ordinary promissory notes are not governed by the law merchant. But, as a general rule, the indorsee, having first used due diligence by suit to collect such notes from the maker, has his recourse on the indorser.

2. The indorsement of a note is a new, distinct contract; and such contract is governed by the law of the place where it is made, without regard to the law of the place where the note was made.

[Cited in Stubbs v. Colt, 30 Fed. 419.]

3. The contract of indorsement includes two essential things: the writing itself, and the delivery of it to the indorsee. And if the indorsement is written in one state, and delivered to the assignee in another, the law of the latter state controls the contract.

[Cited in Stubbs v. Colt, 30 Fed. 419.]

4. A indorsed notes in Indiana, and sent them by mail to B the indorsee, in New York, where B received them. *Held*, that the indorsement was governed by the law of New York.

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[This was a suit by John Mott against Williamson W. Wright.]

Barbour & Howland, for plaintiff.
McDonald & Roach, for defendant.

McDONALD, District Judge. This is an action of assumpsit on ten promissory notes, all dated in May, 1861. Four of them are payable six months after date, and six of them, seven months after date. Their aggregate is $5,219.90. They are all dated at the city of New York, and are made payable at the Bank of North America in that city. These notes were executed by John Wright to the defendant, Williamson W. Wright, and were by him indorsed in blank.

Non-assumpsit is pleaded; and the trial of this issue is, by agreement, submitted to the court without a jury. It would be tedious to detail all the testimony. The following is the substance of the evidence:

The notes and their indorsements were produced in evidence. For some time before they were made, John W. Wright was largely indebted to Robert Ellis, of New York. The debt evidenced by these notes had been kept afloat by what are called "renewal notes" made to Ellis. Of these, the notes sued on are the last series. To procure them, Ellis sent his agent from New York to the residence of the maker and indorser in Indiana, with the notes then blank, to get them executed and indorsed. John W. Wright being then abroad, the agent called on Williamson W. Wright, the defendant, who, at the agent's request, indorsed the notes. Thereupon, the agent left the notes in this condition with D. D. Pratt, an attorney of Indiana, with the request to him that he should ask the said John W. Wright to sign them and forward them to Ellis, in New York. Pratt did so. John W. Wright thereupon signed the notes in Indiana, and forwarded them by mail to Ellis, in New York. When the notes respectively fell due a demand for payment was properly made, and notices of their non-payment were duly given, according to the law merchant.

By the law of Indiana, the indorser of such notes as these is not liable, in consequence of their non-payment and notice thereof, to pay them. Due diligence to collect them from the maker by a suit against him must generally be used in order to fix the liability of the indorser. 1 Gavin & H. St. 448; Kelsey v. Ross, 6 Blackf. 536. By the laws of New York, it is otherwise. There, such notes are governed by the rules of the law merchant; and the indorser is liable, as on an inland bill.

It becomes important, therefore, to ascertain whether the indorsements in question are governed by the laws of Indiana or the laws of New York. According to the evidence, if the Indiana law prevails, the plaintiff can not recover, because he does not appear to have exercised the diligence which that law requires. But if the law of New York is to govern in this matter, then it is plain that the finding must be for the plaintiff.

It is settled in Indiana that the indorsement of a note is a new, distinct contract, and is governed by the law of the state in which the indorsement is made, and not by the law of the place where the note was executed. Hunt v. Standart, 15 Ind. 33; Rose v. Park Bank, 20 Ind. 94. The only question, then, is, were these indorsements executed in Indiana or New York? The execution of an indorsement—and indeed of every written contract—includes, in legal contemplation, two essential things; the actual writing and signing of the instrument, and the delivery of it thus written and signed.

In the case at bar, it is very clear that the writings on the back of the notes were made by the defendant in Indiana. But to make those writings of any validity as a contract between the parties, they must have been delivered. Upon the evidence, were these notes, thus indorsed, delivered to Ellis in Indiana or in New York? It is a well-settled rule of law, that "a note has no binding effect until it is delivered. So, when indorsed by the payee. * * * No matter when or where notes are signed; they are made at the time and place, and by the act, of delivery accompanied by acceptance." Edw. Bills, 187; Hyde v. Goodnow, 3 Comst. [N. Y.] 266. The same rule must apply to the indorsement of notes, because the reason is the same. Well may we therefore say, that no matter when or where an indorsement of a note is made, in legal contemplation the indorsement is executed by the act of delivery to, and the acceptance of, the indorsee.

In this view, the discussion seems to be narrowed down to the following inquiry: Was the act of John W. Wright in inclosing the notes, filled up, signed by him, and indorsed by the defendant, in a letter directed to Ellis in New York, and in placing the same in an Indiana postoffice, a delivery of the notes and indorsements to Ellis, and an acceptance of them by him? In view of the evidence, I can not think that, in legal contemplation, it was. The notes, as indorsed, were "renewal notes." The acceptance of them would, I think, under the circumstances proved, have operated to extinguish the old notes in the place of which they were given. When they were received by Ellis, in New York, he might, so far as I can see, have refused to accept them, and held on to the old notes. But when they came to his hands and he determined to take them in satisfaction of the old notes, the new notes with the indorsements on them were, I think, then and there, in legal contemplation, delivered and accepted. And I am inclined to the opinion that neither the notes nor the indorsements on them had any legal existence till that moment.

It has been suggested by counsel for the defendant, that if these notes had been lost

on their way to New York, the plaintiff might have sued on them as lost instruments. But this, I rather think, is begging the question. He might have sued on them, under such circumstances, if there had previously been a legal, valid delivery and acceptance of them; otherwise, not.

From the evidence, I conclude that the arrangement between Ellis and John W. Wright was substantially this: that if the latter would send to the former certain notes well indorsed, he would receive them in lieu of the notes he then held of John W. Wright; and that till he did so receive them, the arrangement was not consummated. Moreover, till Ellis had actually received these notes, he could not have negotiated them, as he did, to the plaintiff. The notes, as we have seen, were indorsed in blank, and were negotiated to the plaintiff by actual delivery. Indeed, they could not have been transferred to him in any other manner.

Besides, it may well be asked whether, if these notes had been lost on their way to New York, Ellis would have been bound to deliver up the old notes as satisfied by the receipt of the new. I think that, in such a case, he might have maintained an action on the old notes. It should seem unreasonable to hold that the old notes were extinguished before the new were actually received and accepted.

The case of Cook v. Litchfield, 9 N. Y. 279, appears fully to sustain the foregoing view. That case was much like the present. In both, the defendants were accommodation indorsers, and indorsed, out of the state of New York, notes payable in it. In the case referred to, the court say "the defendant indorsed the notes for the accommodation of the maker. This appears from the fact that the notes came from the possession of the maker and not of the indorser, and were first negotiated in New York, and apparently for the benefit of Carew, the maker. So long as they remained in Carew's hands, there was no liability on the part of the indorser. The indorser's contract, therefore, must be regarded as having been made in New York, where the notes were delivered to Ryckman (the first indorsee) and the indorsement first became effective. The law of Michigan (where the indorsement was made) has no application to the case. The contract having been made in New York, the law of New York governs the case with respect to the sufficiency of the notice."

With some doubt as to the justness of the views above expressed, I am inclined to think that, on the evidence, the law is with the plaintiff. Finding for the plaintiff accordingly.

NOTE. An assignment of a negotiable instrument is a new contract between the assignor and assignee, and is governed by the law of the place where it is made. McClintick v. Cummins [Case No. 8,699].

The doctrine of lex loci is thoroughly discussed by Judge Story in his work on Conflict of Laws, §§ 261–272, and §§ 316, 317, where he says that it is clear, upon principle, that the indorsement, as to its legal effect and obligation, and the duties of the holder, must be governed by the law of the place where the indorsement is made.

In the case of Williams v. Wade, 1 Metc. [Mass.] 82, which was an action in Massachusetts upon a note made and indorsed in Illinois, it was held that the plaintiff could not recover against the indorser, it not being shown that he had taken those proceedings against the maker which, in Illinois, are essential before a recovery can be had against the indorsee. Chief Justice Shaw, in delivering the opinion in that case, says: "The note being indorsed in Illinois, we think that the contract created by that indorsement must be governed by the law of that state. The law in question does not affect the remedy, but goes to create, limit and modify the contract effected by the indorsement. In that which gives force and effect to the contract and imposes restrictions and modifications upon it, the law of the place of contract must prevail, when another is not looked to as a place of performance."

In the case of a bill drawn and indorsed in New Granada, payable in New York, it was held in Everett v. Vandryes, 19 N. Y. 436, that as between the drawer and indorsee the law of the place of payment should govern, though as between indorser and indorsee the law of the place of indorsement would control. Consult also Aymar v. Sheldon, 12 Wend. 439.

The only case within our knowledge asserting a contrary rule is Roosa v. Crist, 17 Ill. 450, which was an action by the indorsee of a promissory note, payable to bearer, transferred by delivery in New York, where such a transfer is good and passes the legal title; by the law of Illinois the indorsement must be by writing and upon the instrument itself. The court held that the law of the forum must govern, and that the plaintiff could not sue in his own name. The court, however, in that case seem to overlook the distinction between the mode in which relief will be administered and the legal status of the parties, and one of the three judges, in a dissenting opinion, insists upon what is certainly the general rule and the current of authority, that the effect of the negotiation by delivery in New York was to transfer the legal title to the plaintiff, and by the law of comity he may sue in this state in his own name, adopting the forms of remedy afforded by the local law.

For further authorities that the place of contract and delivery is to govern, see 2 Pars. Notes & B. 327, note z.

Consult Trimbey v. Vignier, 1 Bing. N. C. 151, 159; 27 E. C. L. 584, where, in a suit by the holder of a bill of exchange made and indorsed in blank in France, but without the formalities required by the Civil Code, it was held that no recovery could be had in the English courts, as the contract was governed by the laws of France.

See also De La Vega v. Vianna, 1 Barn. & Adol. 284; 2 Kent, Comm. 453–463, and cases there cited.