## TILDEN *v.* BLAIR.

1. The acceptance of a draft dated in one State and drawn by a resident of such State on the resident of another, and by the latter accepted without funds and purely for the accommodation of the former, and then returned to him to be negotiated in the State where he resides, and the proceeds to be used in his business there—he to provide for its payment—is, after it has been negotiated and in the hands of a *bonâ fide* holder for value and without notice of equities, to be regarded as a contract made in the State where the draft is dated and drawn, even though by the terms of the acceptance the draft is payable in the State where the acceptors reside.

2. It is accordingly to be governed by the law of the former State; and if by the law of that State the holder of it, who had purchased it in a course of business without notice of equities, is entitled to recover the sum he paid for it, though he bought it usuriously, he may recover such sum, though by the law of the State where the draft was accepted and made payable, and where usury made a contract wholly void, he could not.

3. A purchaser of a bill or note who purchases such paper as that above described, though a broker, is not a lender of money on it, and if he purchase honestly and without notice of equities—there being nothing on the face of the draft to awaken suspicion—he can recover the full amount of the draft.

4. Though this court may be satisfied that a plain error has been committed in a judgment below against a defendant in error, and that he ought to have more than the court below adjudged to him, yet if he himself have assigned no error, the error of the court below cannot be corrected here on the writ of the opposite side.

ERROR to the Circuit Court for the Southern District of New York; the case as found by the court having been thus:

On the 4th of August, 1869, W. T. Pelton, a resident of Chicago, Illinois, and doing business there, drew a draft on Tilden & Co., residents of New Lebanon in the State of New York, payable to his own order, for $5000 at sixty days, dating it at Chicago. This draft Pelton sent to Tilden & Co., to the members of which firm he was nearly related, and they accepted it, "payable at the Bank of North America, New York," for his accommodation and in order to aid him in raising funds for carrying on his business, and without

any consideration or security therefor, and without any funds in their hands to protect it; the understanding being that the draft was to be discounted at a certain bank in Chicago, and that Pelton should take it up at maturity. Having accepted the draft, Tilden & Co. sent it back to Pelton, for the purpose of being negotiated in Illinois, and in order that the proceeds might be used in his business in that State and in Michigan. Pelton having indorsed the draft delivered it to one A. C. Coventry for the purpose of having him negotiate it for the benefit of him, Pelton; and Coventry, having indorsed it also, sold it through a note-broker to one Blair at Chicago for $4825, and no more, Blair, at the time when he discounted the draft, having no knowledge whatever of the understanding between Tilden & Co. and Pelton, or that the draft was accommodation paper and accepted without any funds in the hands of Tilden & Co.

The draft when it went into Blair's hands appeared, of course, in this form:

$5000.]                                    Chicago, August 4th, 1869.

*Sixty days after date pay to the order of myself five thousand dollars, value received, with exchange, and charge to account of*
                                                   W. T. Pelton.
To Messrs. Tilden & Co.,
          New Lebanon, New York.

*Accepted, payable at the Bank of North America, New York.*
                                                   Tilden & Co.
*Indorsed:* W. T. Pelton, A. C. Coventry.

By statute of New York, the exacting of greater interest than *seven* per cent. renders a contract illegal and void.

By the statutes of Illinois *ten* per cent. interest is lawful. Any agreement for a higher rate forfeits *all* the interest. But the contract is not void and the principal may be recovered.

And an act of Illinois (that of February 12th, 1857), enacts as follows:

" Where any contract or loan shall be made in this State, or between citizens of this State and any other State or country, bearing interest at any rate which was or shall be lawful accord-

ing to any law of the State of Illinois, it shall and may be lawful to make the amount of principal and interest of such contract or loan payable in any other State or Territory of the United States, or in the city of London in England; and in all such cases such contract or loan shall be deemed and considered as governed by the laws of the State of Illinois, and shall not be affected by the laws of the State or country where the same shall be made payable."

The draft matured, of course, on the 6th of October, 1869; and the acceptors refusing to pay it, Blair sued them in assumpsit in the court below. *Plea*, usury.

The issue was tried by the court, which found the facts as already given, and found conclusions of law as follows:

1st. That by accepting the draft and returning it to the possession of the drawer, the defendants empowered him to negotiate it and put it in circulation by any valid transfer.

2d. That the negotiation and transfer having been made in Illinois was valid, except as to the interest reserved.

3d. That interest having exceeded the rate of ten per cent. per annum interest was forfeited, and could not be collected either from the drawers or acceptors. That as to the principal, it was valid as to both.

4th. That the plaintiff was entitled to judgment for the sum of $4825, being the principal less the interest illegally reserved, with costs.

The defendants excepted to the first, second, and fourth of these conclusions of law, and to so much of the third as found that the contract, except as to interest reserved, was valid, and was binding on the defendants as to the principal.

The plaintiff excepted to the fourth conclusion so far as it limited his right of recovery to the $4825, and to the refusal of the court to allow interest.

Judgment being given for $4825, the defendants, Tilden & Co., brought the case here on error; Blair, the plaintiff, not taking any writ or assigning any error.

*Mr. J. M. Van Cott, for the plaintiffs in error:*

Parties to negotiable paper are liable according to the law

of the place where their respective contracts are *made*, or where their contracts are to be *performed* when made, and to be performed at different places.* And where any fact exists to take the case out of the general law it must be pleaded.†

That the draft was accepted, and was payable in New York, appeared on its face and was notice to all the world; and the liability of the acceptors on their contract could not be varied by the place where the drawer or holder transferred the obligation.

By the law of New York, the negotiation of the draft was unlawful, and the contract connected with it wholly void. The judgment giving Blair anything was, therefore, erroneous.

*Mr. J. E. Burrill (a brief of Mr. J. B. Niles being filed), contra :*

1. The acceptance having been made without consideration, for the accommodation of Pelton, and having had no validity until it was negotiated, and having been first negotiated in Illinois, it had its legal inception there, and the only contract made by the defendants, or created by the transfer of the acceptance, was made there.

2. The draft is dated at Chicago, and that was the place of residence, and place of business, of the drawer; and the acceptance having been made and delivered for the purpose of being negotiated in Illinois, and used in the business carried on by the drawer in that State, it is clear that the acceptance was made with intentional and direct reference to the laws of Illinois.

3. Although the signature of the defendants was affixed to the draft in New York, it was not delivered there, but was sent to Pelton, the drawer, at Chicago, by letter, and it was there received and there negotiated by Pelton in accordance

---

* Everett *v.* Vendryes, 19 New York, 436; Hyde *v.* Goodnow, 3 Id. 266; Cook *v.* Litchfield, 9 Id. 280; Leè *v.* Selleck, 33 Id. 615.

† Everett *v.* Vendryes, 19 New York, 436, 439; Thatcher *v.* Morris, 11 Id. 437, 439.

with the intention of the defendants.   In such circumstances the acceptance is to be treated as made in Illinois.*

As the contract is to be governed by the laws of Illinois, the question whether the purchase by Blair was a violation of the usury laws of that State, is a matter to be decided by its own courts.   Those courts have held that the usury laws do not affect the right to *purchase* negotiable commercial paper at any price which may be agreed upon between the parties; that a man who purchases negotiable commercial paper does not make a loan of money.†

This being the true law of the case, and there having in truth been no question of usury in the case, it is Blair, the plaintiff below, not Tilden & Co., who has cause to complain of the judgment.   Blair, it is plain, has recovered less than he was entitled to.   While the acceptance was $5000, he recovered but $4825, thus losing $175.   In addition he lost the interest from 6th October, 1869, when the note matured, to 2d March, 1873, when the judgment was rendered.   The question now is, whether, inasmuch as the record is brought here by the other side and not by us, we can obtain the relief which we are clearly entitled to?   What good reason is there why this court should not correct the error in the judgment of which we complain?   The sole object of a writ of error is to bring into the appellate court the record from the court below, in order that it may be reviewed.   The whole case with all the facts found and the conclusions of law as stated, is already before the court on the present writ. By no possibility can the court ever be better informed as to the facts or the alleged error of which we complain. Should Blair be required to sue out a separate writ of error in his own behalf, he would necessarily bring here this same record without the variation of a word.   Is such a duplication of this suit required?

The second section of the act of June 1st, 1872,‡ provides

* Lee *v.* Selleck, 33 New York, 618; Cook *v.* Litchfield, 9 Id. 290; Hyde *v.* Goodnow, 3 Id. 270.

† Raplee *v.* Morgan, 2 Scammon, 561; Sherman *v.* Blackman, 24 Illinois, 347.

‡ 17 Stat. at Large, 197.

that this court may affirm, modify, or reverse the judgment, decree, or order, brought before it for review, *or may direct such judgment, decree, or order, to be rendered,* or such further proceeding to be had, by the inferior court, *as the justice of the case may require.*

This provision is similar to that contained in section 330 of the Code of Procedure, by which appeals in the State of New York are governed; and according to the decisions of the courts of that State, where the facts are found by a court without the intervention of a jury, it is competent and proper for the appellate tribunal to render such judgment as upon the facts conceded or established either party was entitled to.[*]

Mr. Justice STRONG delivered the opinion of the court.

That the contract upon which the suit was brought was made in Illinois must be considered as established by the findings of the Circuit Court. It is true the defendants formally accepted the draft in New York, and promised to pay at a bank in New York, but there was no operative acceptance until the draft was negotiated. They sent it back to Illinois, where it had been drawn, for the purpose of having it negotiated there. Pelton, the drawer, for whose accommodation the acceptance was given, was thus constituted the agent of the acceptors to give effect to their action. While the draft remained in his hands it was no binding contract. He had no rights as against the defendants, but he was empowered to negotiate the draft, and thereby to initiate a liability not only of himself, but also of the defendants. It was only when the instrument was negotiated that it became an accepted draft. It has long been settled that the liability of an acceptor does not arise from merely writing his name on the bill, but that it commences with the subsequent delivery to a *bonâ fide* holder, or with notice of acceptance given to such holder.[†] That this is so has

---

[*] Marquat *v.* Marquat, 12 New York, 336; Beach *v.* Cooke, 28 Id. 508; Edmonston *v.* McLoud, 16 Id. 543; Purchase *v.* Matteson, 25 Id. 211; Brownell *v* Winnie, 29 Id. 400; Hannay *v.* Pell, 3 E. D. Smith, 432.

[†] Byles on Bills, 151.

often been asserted in judicial decisions, and often in New York.* The doctrine is most reasonable. It is, therefore, quite immaterial, under the facts of this case, that the defendants resided in New York, and that they *there* wrote their acceptance upon the draft. In legal effect they accepted the draft in Chicago, when by their authority the drawer negotiated it, and thus caused effect to be given to their undertaking. Nor is the law of the contract changed by the fact that the acceptance was made payable in New York. The place of payment was doubtless designated for the convenience of the acceptors, or to facilitate the negotiation of the draft. But it is a controlling fact that before the acceptance had any operation—before the instrument became a bill, the defendants sent it to Illinois for the purpose of having it negotiated in that State—negotiated, it must be presumed, at such a rate of discount as by the law of that State was allowable. What more cogent evidence could there be that it was intended to create an Illinois bill? The case is exactly the same as it would be if the defendants had been residents of Chicago when the draft was drawn, and had accepted it at Chicago for the accommodation of the drawer, designating New York as the place of payment. It is plain, therefore, that the contract is an Illinois contract, and that the rights and liabilities of the parties must be determined according to the law of that State. By its statutes persons may contract to receive ten per cent. interest upon any debt due them, whether it be verbal or written. If they stipulate for a higher rate they forfeit the interest, but the statute expressly allows the recovery of the principal. The contract is not declared to be void. Only so much of it is void as exacts the excessive interest. And by a legislative act passed February 12th, A.D. 1857, it is enacted as follows, viz.: "When any contract or loan shall be made in this State, or between citizens of this State and any other State or country, bearing interest at any rate which

---

* Cook *v.* Litchfield, 5 Selden, 279; Lee *v.* Selleck, 33 New York Reps. 615, and Hyde *v.* Goodnow, 3 Comstock, 271.

was or shall be lawful according to any law of the State of Illinois, it shall and may be lawful to make the amount of principal and interest of such contract or loan payable in any other State or Territory of the United States, or in the city of London, in England, and in all such cases such contract or loan shall be deemed and considered as governed by the laws of the State of Illinois, and shall not be affected by the laws of the State or country where the same shall be made payable." Provisions very similar to these are also made by the statute of February 12th, 1857.*

If, then, the contract is, as we think it must be regarded, an Illinois contract, and if, therefore, the rights of the plaintiff are to be determined by the laws of that State, there can be no doubt he was entitled to judgment, and to judgment for the full face of the draft, with interest from the time it fell due. Even if the contract had been usurious, he would have been entitled to a judgment for all that the Circuit Court allowed him, for, as we have seen, the contract would not have been void, the statute expressly declaring that when usury is taken the principal debt may be recovered, while the interest reserved may not be. The case would be quite different if the law of the State made void an instrument usuriously negotiated. There was, however, no usury. And where a note or a bill is not made void by statute, mere illegality in its consideration will not affect the rights of a *bonâ fide* holder for value.† The plaintiff in this case was a *bonâ fide* purchaser of the draft. At the time of his purchase he had no notice of any equities in the drawer, or in the acceptors. There was nothing on the face of the instrument to awaken suspicion that it was accommodation paper, or that it had not been regularly and lawfully negotiated. He bought it from bill brokers, after it had been indorsed by the drawer and payee, and also by Carpenter, an apparent indorsee of the payee. That his purchase was not corrupt; that it was perfectly lawful under the law of

---

\* Gross's Statutes, 371–2.

† Norris *v.* Langley, 19 New Hampshire, 423; Converse *v.* Foster, 32 Vermont, 320; Conkling *v.* Underhill, 3 Scammon, 388.

Illinois can admit of no question.*  And this is the rule everywhere unless the note or bill is declared by statute to be void in its inception.

The plaintiffs in error, therefore, have no cause of complaint. The Circuit Court gave judgment against them for the sum which the plaintiff had paid for the draft, without interest. The judgment was only too favorable to them. It should have been for the full amount of the acceptance, with interest from the time it fell due, and had the case been brought here by the plaintiffs below we should direct such a judgment. But the present writ presents to us only the assignments of error made by the defendants, and as they are unsustained, we can do no more than

AFFIRM THE JUDGMENT GIVEN.

---

* Sherman v. Blackman, 24 Illinois, 347; Hemenway v. Cropsey, 37 Id. 857.