STUBBS, Ex'x, *v.* COLT.

*(Circuit Court, D. Connecticut.* March 26, 1887.)

1. NEGOTIABLE INSTRUMENTS—DISHONOR OF NOTE—NOTICE TO INDORSER.
   In Georgia (act of February 28, 1876, § 4) notice of the non-payment of a promissory note need not be given to the indorser unless the note is made for the purpose of negotiation, or is intended to be negotiated at a chartered bank.

2. SAME—ACCOMMODATION INDORSEMENT—CONFLICT OF LAWS.
   Where the maker of an accommodation note in Georgia sends it to the payee in Connecticut, who indorses it for the accommodation of the maker, and sends it back to him in Georgia, the liability of the accommodation indorser does not attach until the note is negotiated to a *bona fide* holder; and the place where the note is thus negotiated is, in contemplation of law, the place where the indorsement was made, and the law of that place will govern the contract of indorsement.[1]

At Law.

*John S. Beach,* for plaintiff.
*Henry C. Robinson,* for defendant.

SHIPMAN, J. This is an action at law by the indorsee and holder of a negotiable promissory note against the indorser. The defendant has demurred to the complaint. The complaint alleged that S. P. Goodwin, on the ———— day of October, 1883, being then a resident of Savannah, Georgia, and a citizen of said state, made his promissory note for the sum of $3,000, payable, on demand after date, to the order of the defendant, at the office of the Citizens' Loan Company, Savannah, Georgia, for value received; that said S. P. Goodwin, on the ———— day of October, 1883, sent said note by mail to the defendant, then a resident of the town of Farmington, in the state of Connecticut, and a citizen of said state, who received the same in due course of mail on the eighteenth of October, 1883; that defendant at said Farmington, on said eighteenth day of October, 1883, indorsed said note, and sent the same by mail to the said S. P. Goodwin at said Savannah, who received said note in due course of mail; that said note was so indorsed by the defendant for the accommodation, use, and benefit of the said S. P. Goodwin; that the said S. P. Goodwin, after receiving said note so indorsed, thereupon, for value received, transferred and delivered the same to the said Citizens' Loan Company at Savannah, Georgia, and received the proceeds thereof; that said Citizens' Loan Company remained the owner of said note until the nineteenth day of January, 1884, when the said company, for value received, transferred and delivered the same to the plaintiff, who still owns said note; that payment of said note has been demanded, but it remains unpaid. The defendant demurred (1) because said complaint contains no allegation that the defendant was notified of any demand upon said note, of its protest for non-payment, or of its non-payment, or that the holders looked to him, the defendant, for payment; (2) because it con-

[1]See note at end of case.

tains no allegation of any demand of the maker of the note, or of a demand of anybody connected with it, in the time required by law.

Two questions arise upon this demurrer: (1) Did the law of Georgia, at the time of the indorsement of the note in suit, require notice of the indorser of the demand of payment, and of the non-payment, of said note, at its maturity, and that the holders looked to the indorser for payment? (2) If the law of Georgia did not require such notice, is the contract of indorsement to be governed, under the facts stated in the complaint, by the law of Connecticut, which requires such notice to the indorser, or by the law of Georgia?

The first section of the act of Georgia of December 26, 1826, provided as follows:

"From and after the passage of this act, that the practice heretofore required of making a demand of the makers of promissory notes and other instruments, for the payment and performance of the same, and their giving notice of such demand, within a reasonable time, to the indorsers of said promissory notes and other instruments, shall cease and become entirely unnecessary to bind said indorsers; and, when any person whatever indorses a promissory note or other instrument, he shall be held, taken, and considered as security to the same, and as in all respects bound as security, until said promissory note or other instrument is paid off and discharged, and shall be liable to be sued in the same manner and in the same action with the principal or maker of said promissory notes or other instruments, any law, practice, or usage to the contrary notwithstanding: provided, always, that nothing herein contained shall extend to any promissory notes which shall be given for the purpose of negotiation, or intended to be negotiated, at any chartered bank, or which may be deposited in any chartered bank for collection: and provided, also, that nothing contained in this act shall be construed so as to prevent the indorser from defining his liability in the indorsement."

The language of this section was changed in the Code of Georgia of 1863, which provided that—

"When bills of exchange and promissory notes are made for the purpose of negotiation, or intended to be negotiated, at any chartered bank, and the same are not paid at maturity, notice of the non-payment thereof, and of the protest of the same for non-payment or non-acceptance, must be given to the indorsers therein within a reasonable time, or the indorsers will not be held liable thereon; but in no other case, and upon no other bills or notes, shall notice or protest be held necessary to charge the indorser."

This provision was modified by section 4 of the act approved February 28, 1876, as follows:

"It shall not be necessary to protest, as now required by law, in order to bind indorsers, except in the following cases, to-wit: (1) When a paper is made payable on its face at a bank or broker's office; (2) when it is discounted at a bank or broker's office; (3) when it is left at a bank or broker's office for collection, and in all such cases days of grace shall be allowed."

Without undertaking to decide what effect the provisions of the law of 1876, in regard to protest, had upon previous legislation upon that subject, it seems to be clear that notice of the non-payment of a promissory note need not be given to the indorser unless the note is made for

the purpose of negotiation, or is intended to be negotiated, at a chartered bank.    This state of the law of Georgia is expressed, with considerable blindness, in the Code of 1882, which, however, it is said, has never been enacted by the legislature of the state.

The remaining question is whether the indorsement of the defendant is to be governed by the law of Connecticut or Georgia.    The note was accommodation paper made to the order of the defendant, sent to him by mail, indorsed by him in Connecticut, and returned by mail to the maker in Georgia, and by him delivered to the company which discounted it.    It is agreed that an indorsement constitutes a new contract, which is to be governed by the law of the place where it is made, though the note was made or is to be paid elsewhere.    The question is confined to the case of accommodation paper having been indorsed for the purpose of its being discounted, and the paper so indorsed having been delivered to the maker in another state for the purpose of negotiation, and negotiated by him in that state, and is:    In which state was the indorsement made,—the state where the name was written, or the state where the note was negotiated?

The theory of the law on the subject of the place of the indorsement of accommodation paper is given in *Tilden* v. *Blair*, 21 Wall. 241; *Lawrence* v. *Bassett*, 5 Allen, 140; *Cook* v. *Litchfield*, 9 N. Y. 279; *Young* v. *Harris*, 14 B. Mon. 447; and in *Mott* v. *Wright*, 4 Biss. 53,—and is to the effect that the accommodation indorsement does not become operative until the paper is negotiated.    So long as the note remained in Colt's or in Goodwin's hands, the liability of the indorser did not arise, but commenced when the note was negotiated to a *bona fide* holder.    The note was sent to Georgia for the purpose of negotiation, and Goodwin, the maker, was thus constituted the agent of Colt "to initiate a liability, not only of himself, but also of the defendant."    *Tilden* v. *Blair*, *supra*.    The place where the liability upon the indorsement commenced is the place where the indorsement was made.    This statement of the law is given in various modes of expression in the decisions which have been cited. The turning point is the fact that the accommodation paper only becomes a valid promise to pay money, and binding upon the indorser, when it is delivered to the person who gives a valuable consideration for it, and that, consequently, the place where the indorsement becomes effective is the place where, legally speaking, it was made.    The court, in *Tilden* v. *Blair*, regards the person to whom the paper is sent for negotiation as, by that act, the agent of the indorser to give the note life, and create the liability.

The law is thus stated in 1 Daniel, Neg. Inst. § 868:

"Where a note is indorsed for accommodation in one state, and delivered in another, the indorsement is governed by the law of the latter; for the accommodation indorser makes that party to whom he lends his signature his agent for putting the instrument into circulation, and his own contract with those to whom it is negotiated must consequently be judged on the principles of agency, which refer it to the place where the circulation commences."

The demurrer is overruled, with liberty to plead anew.

NOTE.

CONFLICT OF LAWS. The general rule is that a negotiable instrument is governed by the laws of the state in which it is payable: Webster v. Howe Machine Co., (Conn.) 8 Atl. Rep. 482; Shoe & Leather Nat. Bank v. Wood, (Mass.) 8 N. E. Rep. 753, and note. Where no place of payment is expressed, it is governed by *lex loci contractus.* Hart v. Wills, (Iowa,) 2 N. W. Rep. 619; Griswold v. Golding, (Ky.) 3 S. W. Rep. 535.

A receipt signed in New Hampshire for money received by the borrower's agent in Massachusetts, the receipt being delivered to the lender in the latter state, is a contract made in Massachusetts. Hill v. Chase, (Mass.) 9 N. E. Rep. 30.

Where an indorsement is written on a note by the payee thereof in one state, and a sale and delivery of the note is made in another state, the contract of indorsement must be regarded as made and consummated in the place where the sale and delivery occurred, rather than where it was written. Briggs v. Latham, (Kan.) 13 Pac. Rep. 393.