## In re QUALITY SHOP.

### TRADERS' NAT. BANK v. WILLSON.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

No. 1,915.

1. BILLS AND NOTES (§ 96*)—"ACCOMMODATION PAPER."

Where a bankrupt executed a note, supposing it was intended to reimburse the payees in part for the purchase price of a stock of goods purchased by the payees, which the bankrupt supposed he was to sell for the joint benefit of both, it was not accommodation paper; the term "accommodation paper" being such as is made, accepted, or indorsed for the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

benefit of another, without consideration, for the purpose of a loan of credit to the person accommodated (citing 1 Words and Phrases, 74).

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 165; Dec. Dig. § 96.*]

2. BILLS AND NOTES (§ 145*)—NEGOTIABILITY—WHAT LAW GOVERNS.

Where a note was both executed and made payable in Indiana, but not at a bank, it was presumptively an Indiana contract, and not negotiable, under Rev. St. Ind. 1908, § 9076, providing that merchandise paper shall not be negotiable, unless payable at a bank.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 362; Dec. Dig. § 145.*]

3. BILLS AND NOTES (§ 517*)—NEGOTIABILITY—WHAT LAW GOVERNS—TRANSMISSION TO FOREIGN STATE—EVIDENCE.

Where a bankrupt signed and executed a note in Indiana, not payable at a bank, to payees residing in New York, believing that it was for the bankrupt's share of the price of a stock of goods purchased for the joint benefit of both the bankrupt and the payees, and was therefore on full consideration, but, on discovering that his interest in the purchase was not to be recognized, demanded a return of the notes, the evidence was insufficient to show that the paper was transmitted to New York for discount there, and, being actually negotiable there, was governed as to its negotiability by the law of New York, instead of the law of Indiana.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1807–1815; Dec. Dig. § 517.*]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

In the matter of bankruptcy proceedings of the Quality Shop. From a judgment disallowing a claim of the Traders' National Bank against Romney L. Willson, as trustee of the bankrupt, the bank appeals. Affirmed.

See, also, In re Quality Shop Co., 202 Fed. 196.

Appeal from a judgment disallowing a claim of Traders' National Bank against the bankrupt. The trial court held that, if the promissory note on which the claim is based is to be regarded as made upon consideration, it is void because it was an Indiana contract, made nonnegotiable by Indiana law, and is shown by the evidence to have been entirely without consideration. If, on the other hand, the note is to be regarded as accommodation paper, it is void, because the corporation maker had no power to issue such paper.

It appears that the bankrupt was an Indiana mercantile corporation having a capital stock of $15,000, of which Jacob Strauss, president and manager, held $5,000, and Meyer and Simon, residing in Rochester, N. Y., owned the balance. Meyer and Simon were a partnership interested in 11 retail stores in various cities, part of them similar to the bankrupt. In March, 1910, Meyer and Simon negotiated for the purchase of a stock of clothing in Indianapolis, where the bankrupt was located, and on April 26, 1910, a bill of sale of the stock referred to was made. At the time of this purchase, Strauss, manager of the bankrupt, supposed the purchase was for it, and that the two stocks of goods would be consolidated, and the Quality Shop removed to the new place of business, where the purchased stock was located; but there was actually no reason or basis for this belief on his part. On May 12, 1910, Meyer and Simon requested Strauss to make a note of the Quality Shop for $19,876.30, approximately one-third of the purchase price of the Indianapolis stock. This sum was inserted in the note, so it would not appear to Strauss as being accommodation paper. Strauss, supposing, but without any basis of fact, that the note represented part of the

purchase price, signed it as president of the Quality Shop and sent it to Meyer and Simon. A copy of the note follows:

"$19,876.30.                                           Indianapolis, Indiana, May 12, 1910.

"Four months after date we promise to pay to the order of Ely Meyer & M. C. Simon, nineteen thousand eight hundred and seventy-six and $30/100$ dollars at No. 5 North Penn. St.
     "[Signed]                                    Quality Shop Company,
                                               "Jacob Strauss, President."

The place of payment mentioned in the note is Indianapolis, and by the Indiana law the note was not negotiable, because not payable at a bank. There is nothing in the case to show that Strauss sent the note to the payees expecting it would be discounted. On receiving the note, Meyer and Simon inserted the words "Indianapolis, Indiana," just before the date.

On May 24, 1910, Meyer and Simon took the note to the Traders' National Bank of Rochester, N. Y., where they had a line of credit. Simon told the bank the note was given for merchandise, and was not accommodation paper. The bank had agreed to loan $100,000 on accommodation paper, which limit had then been reached. The note was discounted, and the proceeds carried to the credit of Meyer and Simon. At the time of giving the note the Quality Shop owed nothing to Meyer and Simon, but was their creditor to a considerable amount. The Quality Shop never received anything on account of the note. The Quality Shop having become bankrupt, a claim was filed upon the note, but disallowed by the referee, and by the District Court on review. By the law of New York, the note was negotiable; not so by the law of Indiana.

Contrary to the finding of the referee, counsel for appellant assert that the proofs show inferentially the following state of facts: "That the stock was purchased for the Quality Shop—that is, was all one connected scheme of a set of rascals (of whom Strauss was one) to buy the stock really for the Quality Shop in another name, put away the best goods, have a small fire, get big damages from the insurance companies, fake the poor goods off on a gullible public at a smoked goods sale, and then have the Quality Shop step in and start business again in that place under the pretense of a brand new stock of goods. We think Strauss' pretense of innocence, and of having given the note to Meyer and Simon upon the belief that it was purchase money for the stock, but later found out that it was accommodation paper and demanded it back—is clearly shown to be simply a pretense, and intended as an excuse." The referee, however, found the contrary, and his conclusion was approved by the trial court. These findings are presumptively correct, and should be taken as true, unless obvious error is shown, of a serious and important nature. Nothing of the kind appearing, the findings are conclusive.

Alexander C. Ayres and Frank C. Ayres, both of Indianapolis, Ind., for appellant.

Ralph Bamberger and Isidore Feibleman, both of Indianapolis, Ind. (Wm. L. Taylor, John W. Holtzman, and Lewis A. Coleman, all of Indianapolis, Ind., of counsel), for appellee.

Before BAKER, Circuit Judge, and SANBORN and LANDIS, District Judges.

SANBORN, District Judge (after stating the facts as above). The District Court took the view that the claim should be disallowed, whether the note be considered merchandise paper or accommodation paper. If merchandise paper, it was invalid, because without consideration and not negotiable, under sections 9073 and 9076, R. S. Indiana, and Rominger v. Keyes, 73 Ind. 375. If accommodation paper, it was likewise invalid as ultra vires. Park Hotel Co. v. Fourth Na-

tional Bank, 86 Fed. 742, 30 C. C. A. 409, and Merchants' Bank v. Baird, 160 Fed. 642, 90 C. C. A. 338, 17 L. R. A. (N. S.) 526.

[1] That the note was not intended to be accommodation paper is most certainly shown by the finding of the referee, as well as the record. As stated by the referee, Meyer and Simon "requested the note for an off amount, so it would not have the appearance of being accommodation paper." Strauss supposed it was intended to reimburse the payees in part for the purchase price paid by them for the other stock, and with that impression signed it. Therefore it is undeniable that the paper was not designed as a loan of credit, which is the universal test of the character of the paper. Accommodation paper means commercial paper made, accepted, or indorsed for the benefit of another, without consideration. It is made for the purpose of a loan of credit to the person accommodated. 1 Words and Phrases, 74. Within this definition it is entirely clear that the note in question cannot have been given for accommodation or intended as a loan of credit.

[2] Treating the note, therefore, as merchandise paper, the only further question is whether it was negotiable. This depends on two considerations: First, whether it is to be regarded as an Indiana contract, and so nonnegotiable on its face; and, second, whether it may be brought within the rule of Tilden v. Blair, 21 Wall. 241, 22 L. Ed. 632, to the effect that paper transmitted from one state to another for the purpose of discount there, and actually there put out, is governed by the law of the latter state. Being both made payable and executed in Indiana, the note is presumptively an Indiana contract, because it is deemed to have reference particularly to the law of the place of performance in the construction of the obligation assumed. Jenkins, C. J., in Phipps v. Harding, 70 Fed. 468, 17 C. C. A. 203, 30 L. R. A. 513; Supervisors v. Galbraith, 99 U. S. 214, 25 L. Ed. 410.

[3] Since, then, the note in question was made to be governed by the law of Indiana, and is by that law made nonnegotiable, the second question is whether there is anything in the case to show that it was transmitted to the payees for negotiation in New York. Not only is the record silent on this point, so far as express evidence or conclusion is concerned, but there is some inference to the contrary. Strauss was asked to send on a note, which he supposed was on full consideration. Before signing it, he consulted an attorney, whose advice further confirmed his belief. Later on he demanded the return of the note. Supposing the note was to be given for the purchased stock of goods, it would be quite immaterial to him whether it should be negotiated, since the obligation to pay would not be thereby enlarged or in any manner affected. It is reasonable to infer, therefore, that Mr. Strauss did not consider this apparently unimportant question, or have any intention or conception respecting it. Hence the rule referred to that commercial paper transmitted for negotiation is governed by the law of the place of negotiation has no application.

The judgment of the District Court should be affirmed.