HOOLEY v. TALCOTT.

(Supreme Court, Appellate Division, First Department. December 18, 1908.)

1. CONTRACTS (§ 2*)—REQUISITES AND VALIDITY—WHAT LAW GOVERNS.

All matters bearing on the execution, interpretation, and validity of a contract, including the capacity of the parties, are determined by the law of the place where it is made.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 2, 41, 145, 724–727; Dec. Dig. § 2.*]

2. CONTRACTS (§ 276*)—PERFORMANCE—WHAT LAW GOVERNS.

All matters connected with the performance of a contract are regulated by the law of the place where it is to be performed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1216; Dec. Dig. § 276.*]

3. CONTRACTS (§ 325*)—ACTIONS FOR BREACH—WHAT LAW GOVERNS.

All matters respecting the remedy to be pursued, including the bringing of suits and the service of process, depend upon the law of the place where the action on the contract is brought.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1558–1562; Dec. Dig. § 325.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CONTRACTS (§ 15*) — VALIDITY — NATURE AND ESSENTIALS — MEETING OF MINDS.**

The meeting of the minds of the contracting parties is one of the essential elements in a contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 61; Dec. Dig. § 15.*]

**5. CONTRACTS (§ 161*)—REQUISITES AND VALIDITY—WHAT LAW GOVERNS.**

The whole transaction will be looked into by the court to ascertain where the real contract, the meeting of the minds, evidenced by a written instrument, took place; and, when that is ascertained, neither the date of the instrument, where signed, or where payable, is controlling.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 743; Dec. Dig. § 161.*]

**6. USURY (§ 2*) — USURIOUS CONTRACTS — NATURE AND VALIDITY—WHAT LAW GOVERNS.**

Where an agreement to loan money in the possession of the lender in New York upon the security of goods stored there was entered into in New York upon an application made there by the borrower's agent, and the notes evidencing the loan were delivered to the lender by the agent in New York, and the money was advanced and the interest was paid there, the transaction was a New York contract, governed by the usury laws of that state, and not a Pennsylvania contract, though the notes were signed and made payable in Pennsylvania, where the borrower resided.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 2-15, 418; Dec. Dig. § 2.*]

Appeal from Trial Term.

Action by George L. Hooley, as trustee in bankruptcy of Emil Schurr, against James Talcott. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Putney, Twombley & Putney (Henry B. Twombley, of counsel, and Lewis H. Hall, on the brief), for appellant.

Rounds & Schurman (Arthur C. Rounds, of counsel), for respondent.

CLARKE, J. The action is replevin to recover 36 bales of silk, which it is claimed were held by defendant as security for a usurious loan. The plaintiff is the duly appointed and qualified trustee in bankruptcy of Emil Schurr. In 1902, 1903, and 1904, Schurr was in the silk business under the name of Schurr Bros. He manufactured ribbons and dress goods, and also bought and sold raw silk. The manufacturing business was done in Philadelphia. He bought and sold raw silk in New York. In 1902 and 1903 he was short of ready money, and through his agent, Peter Bush, of New York, applied to the defendant, who was a commission merchant residing in New York, and made the arrangements with Talcott in New York as Schurr's representative, with full power thereto conferred by Schurr. Bush was buying and selling silk for Schurr on commissions, and he arranged these loans as a favor to Schurr. The arrangement Schurr made through Bush with Talcott was that Schurr was to pay on these loans 6 per cent. interest and a commission of from one-quar-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ter to one-half of 1 per cent. per month. This arrangement was made in New York City. Under this general arrangement, loans were thereafter made, some of which were paid and some of which were unpaid at the date of the bankruptcy of Schurr. As representing the unpaid loans, Talcott held five notes of Schurr at the time this suit was brought, aggregating in value $12,450. These notes were all renewals of previous notes, the originals of which had been discounted by Talcott, and interest and commissions paid in advance thereon, under and in accordance with the arrangement agreed upon. The method of making these loans was in every instance substantially the same. Schurr signed and indorsed blank papers and sent them to Bush in New York. Bush filled them in as notes dated in Philadelphia, payable to Schurr at a bank in Philadelphia, and indorsed by Schurr. Bush then delivered them, so made out, to Talcott, who thereupon gave his check to Schurr, either for the full amount of the loan, or for the amount of the loan less interest and commissions. In the former case Bush gave to Talcott Schurr's check or checks to cover the interest and commissions. In some instances interest and commission were paid by one check. In some instances there was a separate check to Talcott for interest and commissions, and in one or two instances there was a check to Talcott for interest and a check to the order of Bush for the amount of the commissions, which was indorsed by Bush to Talcott. As security for these loans, silk belonging to Schurr and stored in a warehouse in New York was turned over to Talcott as collateral security. In all cases the notes and checks signed by Schurr were first delivered to Bush by Schurr, who personally turned them over to Talcott in New York. The same procedure took place upon the various renewals. In all these transactions Talcott was acting as a money lender solely. He did not agree to sell any goods for Schurr, nor did he have any authority to sell. There were no dealings between Talcott and Schurr, pursuant to which any moneys became due from Schurr to Talcott, other than these loans made pursuant to the general arrangement between Bush, Schurr's agent, and Talcott. The net result of these transactions was that Talcott received amounts aggregating something over 9 per cent. to something over 12 per cent. per annum; the interest and commissions in all cases being paid in advance.

Talcott claims in his answer that the alleged commissions were for caring for the goods, facilitating and arranging for substitutions, and for attending to and arranging appraisals; but it appears that the goods were stored in a warehouse, and that Schurr himself paid the warehouse and insurance charges, without the intervention of Talcott. The sole claim of right to these so-called commissions, as testified to by the defendant himself, was that Schurr had the right to substitute other goods for those held as collateral security, and that if he availed himself of that privilege then defendant had to have a silk man examine the substituted goods, "that the value was there and quality," etc. There is no evidence that any such examinations were made or anything paid by Talcott therefor. It appears that the alleged commissions were a fixed percentage of one-quarter or one-half of 1 per cent. a month for the amount loaned, and either

deducted from the amount loaned or paid in advance, and regardless of whether there were any appraisals or substitutions.

The learned trial court did not pass upon the question whether the payments of these sums of money in advance, as shown by the evidence, constituted a usurious transaction or not, but directed a verdict for the defendant upon the ground that as the notes were dated in Philadelphia and there made payable, the contract was a Pennsylvania and not a New York contract, and therefore that the laws of New York against usury did not apply. In Union National Bank v. Chapman, 169 N. Y. 538, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614, the Court of Appeals laid down the following rules:

"(1) All matters bearing upon the execution, the interpretation, and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made. (2) All matters connected with its performance, including presentation, notice, demand, etc., are regulated by the law of the place where the contract by its terms is to be performed. (3) All matters respecting the remedy to be pursued, including the bringing of suits and the service of process, depend upon the law of the place where the action is brought."

As the solution of the question presented by this record is the interpretation and validity of the contract between the plaintiff's assignor and the defendant, it is to be determined by the law of the place where the contract was made. Is that to be determined by the date of the note and place of payment therein provided, one of the incidents of the transaction, or is the entire transaction to be examined? This is not an action upon the notes. It is an action by the trustee in bankruptcy to recover possession of specific bales of silk, which concededly were the property of the bankrupt, and as his property in storage in a warehouse in the city of New York, upon which he paid the storage and insurance charges, claimed by the defendant as collateral to secure loans of money evidenced by promissory notes which he had in his possession. The application for the loan was made by the borrower's agent to the defendant in the city of New York; the agreement entered into upon such request was made in the city of New York; the notes, though made payable, for the convenience of the borrower, at a bank in Philadelphia, were delivered to the defendant by the borrower's agent in the city of New York; the interest and the so-called commission were paid to the defendant in the city of New York; the money loaned was in possession of the defendant in the city of New York, and, although the checks representing the same were sent to the borrower in Philadelphia, those checks were paid by the money of the defendant in the city of New York; and the goods, the collateral security for the repayment of such loans, were actually stored in the city of New York. It seems to me that upon the whole transaction there is no doubt that the agreement at bar was a New York contract.

The contract was for the loan of money upon the security of warehoused merchandise. The minds of the parties upon that contract met in the city of New York, where the agreement to loan upon such security was made. That the court is to look into the whole trans-

action in its determination of the question is illustrated by the following cases:

Union Nat. Bank v. Chapman, supra, was an action upon a note made in Alabama, payable at the Union National Bank, Chicago, Ill. The facts found were that Mrs. Chapman signed the note at the request of her husband as surety for the firm, and that, while it was the intention of the firm that the note should be negotiated and discounted in the state of Illinois, she did not know of such intention, except from what appeared on the face of the note; that she signed the note for the purpose of raising money for the firm, to enable it to continue its work upon its contract in Alabama; that after the note was executed it was delivered to the payee named therein, who took it to the plaintiff's bank in Chicago, indorsed it, and delivered it to the bank, where it was discounted. The defense interposed by Mrs. Chapman was that she had no capacity to make the contract in question under section 2349 of the Code of the state of Alabama of 1886, which provides that the wife shall not directly or indirectly become surety for her husband. The court said:

"It is true the note did not have a valid inception, in such a sense as to create a liability on the part of the makers, until it was discounted and passed over to the bank; but this does not necessarily make it an Illinois contract so far as the surety is concerned. Mrs. Chapman's contract to become surety was complete when the instrument was signed and delivered to the payee. It was then a contract beyond her recall, upon which she in the future might become liable, when negotiated by the payee, if otherwise valid; and the place of negotiation could not, under the circumstances, in any manner change the force or effect of her contract. One of the essential elements in a contract is the meeting of the minds of the contracting parties upon the matter which is the subject of the contract. In this contract Mrs. Chapman agreed with the payee of the note that she would become surety for her husband to the amount thereof, and this agreement was made in the state of Alabama."

In Tilden v. Blair, 21 Wall. 241, 22 L. Ed. 632, where a draft drawn in Chicago was drawn by one Pelton on Tilden & Co., residing at Lebanon, N. Y., and was by them accepted in New York, and made. payable at a bank in New York, and then sent by them to Pelton in Chicago, and there discounted for the benefit of Pelton, the Supreme Court of the United States held that it was an Illinois, and not a New York, contract:

"It is quite immaterial, under the facts of this case, that the defendants resided in New York and that they there wrote their acceptance upon the draft. In legal effect they accepted the draft in Chicago, where by their authority the drawer negotiated it and thus caused effect to be given to their undertaking. Nor is the law of the contract changed by the fact that the acceptance was made payable in New York. The place of payment was doubtless designated for the convenience of the acceptors, or to facilitate the negotiation of the draft. But it is a controlling fact that before the acceptance had any operation, before the instrument became a bill, the defendants sent it to Illinois for the purpose of having it negotiated in that state. * * * What more cogent evidence could there be that it was intended to create an Illinois bill?"

So in the case at bar it would seem that it was quite immaterial that Schurr. resided in Philadelphia, signed the note there, and made it payable for his convenience at a bank there. It did not become a note until it was presented for discount in New York, where the

money was advanced thereon, and where it had been sent by Schurr for the purpose of being discounted.

In Wayne Co. Savings Bank v. Low, 81 N. Y. 566, 37 Am. Rep. 533, where a note was actually written in Pennsylvania, but was signed by the defendant in New York, and there mailed by him to the plaintiff in Pennsylvania, it was said:

"The note now in suit was dated and made payable in New York; but it was made for the express purpose of being used in renewal of another note for the same amount then held by the plaintiff, a bank in Pennsylvania. * * * The note and interest were consequently received by the plaintiff in Pennsylvania, and all that was done in performance of a previous agreement which had been entered into between the plaintiff and the defendant. All that was done by the plaintiff in New York was simply in execution of that agreement, and, as is said in Dickinson v. Edwards, 77 N. Y. 573, 580, 33 Am. Rep. 671, in citing Tilden v. Blair, 21 Wall. 421, 22 L. Ed. 632, the designation of the place of payment of the note was an incidental circumstance for the convenience of the maker, and not an essential part of the contract, or with the intent to affix a legal consequence to the instrument. * * * Neither can it be claimed that because the obligation, instead of being signed in the state where the contract was made, is signed in another state and sent by mail to the place of the contract, it must be governed by the usury laws of the place where it was signed."

The contract was held a Pennsylvania contract. So here the contract for the loan of money was made in this state. The note and the interest were here received, and it cannot be that the signing of the note and making it payable in Pennsylvania made the transaction anything but a New York contract.

In Staples v. Nott, 128 N. Y. 403, 28 N. E. 515, 26 Am. St. Rep. 480, the note in suit was a renewal note of one held in Washington, D. C. The maker went to Washington and prevailed upon plaintiff to agree to take a new note for his debt. This note was then drawn, dated Washington, D. C., and payable at a bank in Watertown, N. Y., by the plaintiff, and handed to the maker for execution, who took it to his home in Syracuse, where his and the appellant's signature were affixed as makers and indorsers, respectively. In holding the transaction to be a Washington contract the court said:

"For the affixing of the signatures to the note by the maker and the indorser, however important as acts, was yet but a detail in the performance and execution of the contract which had been agreed upon with the plaintiff. But naming a New York bank as the place where the maker would provide for the payment of the note did not characterize the contract in one way or the other. That arrangement was one simply for the convenience of the maker. * * * For the court to hold, because the note was not actually signed and indorsed in the District of Columbia, where the agreement it evidenced was made, or because it was made payable in another state, that the contract was void as contravening the usury laws of the place of signature and of payment, would be intolerable and against the decisions of this court. Wayne Co. Sav. Bk., 81 N. Y. 566, 37 Am. Rep. 533; West Trans. Coal Co. v. Kilderhouse, 87 N. Y. 430; Sheldon v. Haxtun, 91 N. Y. 124."

So to hold that, because the notes in the case at bar were not actually signed in New York, where the agreement they evidenced was made, or because they were made payable in another state, would be against the decisions of the Court of Appeals.

The rule deducible from all these cases is that the whole trans-

action will be looked into, to ascertain where the real contract, the meeting of the minds, simply evidenced by the instrument, took place. When that is ascertained, neither the date of the instrument, where signed, nor where payable, is controlling. In the cases cited the instruments, though signed and made payable in New York, were held not to be New York contracts, because the agreement which they evidenced took place elsewhere. The converse must be true. As in the case at bar the agreement to loan money and to deposit goods as collateral security took place in New York, the contract was a New York contract, though the notes evidencing that transaction were signed and made payable in Pennsylvania.

It follows, therefore, that, the verdict having been directed for the defendant upon the ground that the contract was a Pennsylvania contract, the judgment entered thereon should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.