Westchester Mortgage Company, Plaintiff, *v.* Grand Rapids and Ionia Railroad Company and Others, Defendants.

Supreme Court, Westchester County, February 2, 1926.

**Bills and notes — consideration — sale by executors of payee at $8,500 of promissory note for $14,000 with interest at ten per cent per annum with assignment of maker's interest as remainderman in certain securities given as collateral for note — sale not at grossly inadequate consideration where holders regarded note as of little value — contract construed under New York law since negotiations leading to execution took place within State — note void and against public policy by reason of usurious interest rate — purchaser of note and assignment cannot enforce payment.**

Sale by the executors of the payee to the plaintiff at $8,500 of a promissory note for " $14,000 with interest thereon at the rate of 10 per cent per annum, payable quarterly in advance " together with the assignment of the maker's interest as remainderman under a will in certain securities, which, under the terms of the assignment, were given as collateral for the payment of said note, was not at a grossly inadequate consideration where the note had been regarded as of little value and uncollectible by the executors of the estate of its payee, and the interest thereon had not been paid for seventeen years. Moreover, by reason of said sale, plaintiff acquired all the rights and interests of the payee's estate in and to said note and the collateral security.

The transaction relating to the execution of the note and the assignment of the remainderman's interest must be considered under the laws of New York, since the negotiations, the settlement of the terms, the execution of the papers and the payment of the money all were done in the city of New York. But, regardless of where the contract was made, it is unconscionable, void and contrary to the public policy of this State and cannot be enforced by a court of equity in this State, because the payee exacted and wrote into said note an unreasonable and extortionate rate of interest; therefore, plaintiff's complaint to enforce payment of said note must be dismissed on the merits.

Action in equity to enforce payment of promissory note brought by assignee of note and of collateral security.

*Jonathan Holden,* for the plaintiff.

*Godfrey & Marx,* for defendant John A. Van Rensselaer.

*Harry M. Stevenson,* for defendants John M. and James T. Phelan.

*Beekman, Bogue, Clark & Griscom,* for defendants Hargrave and others.

*Barry, Wainwright, Thacher & Symmers*, for defendants Kennedy, as executrix, and others.

*Charles Rush*, for defendants Hurd and others.

TOMPKINS, J.   On November 9, 1905, Frances M. Hoyt, a resident of Newport, State of Rhode Island, died in that city, leaving a last will and testament, which was duly probated in Newport county, in said State, in and by which the testatrix made a bequest for the benefit of Mrs. John K. Van Rensselaer and her son, the defendant John A. Van Rensselaer, as follows:

" *Fifth.* Whereas, there are certain securities belonging to me now in the hands of William A. Duer, the income from which he has collected and paid over to Mrs. John K. Van Rensselaer, I do hereby bequeath the said securities to the said William A. Duer in trust, with full power to continue or change the investments from time to time and to pay the net income therefrom to Mrs. John K. Van Rensselaer for and during her life, and upon her death to pay over the principal of said trust fund to her son, John A. Van Rensselaer, absolutely, free and clear of any trust."

Both beneficiaries of this provision of said will were living at the time of the death of the testatrix.   Mrs. John K. Van Rensselaer died in the year 1925 and after the commencement of this action. John A. Van Rensselaer is still living and is one of the defendants herein.

In the spring of 1906 the defendant John A. Van Rensselaer, the remainderman named in the said trust, applied for a loan to Andrew J. Shipman, a member of the New York bar, and he, acting as a broker, and as attorney for James J. Phelan, a resident of New York State, arranged for a loan of $14,000 to be made by the said Phelan to the said John A. Van Rensselaer, and to secure said loan Van Rensselaer gave to Phelan a promissory note in the following language:

" $14,000.                NEWPORT, RHODE ISLAND, *May* 28, 1906.

" One year after date, for value received, I promise to pay to James J. Phelan, or order, $14,000 with interest thereon at the rate of 10 per cent per annum, payable quarterly in advance, until said principal sum is paid, whether at or after maturity of installments of interest in arrears, to bear interest at the rate aforesaid until paid.   Payable at Newport Trust Company, Newport, R. I.                " JOHN A. VAN RENSSELAER."

No part of the principal of this note has been paid, nor has any interest been paid thereon since September, 1907.

On the same date (May 28, 1906) the said John A. Van Rensselaer

**536** WESTCHESTER M. Co. *v.* GRAND RAPIDS & IONIA R. R. Co.

Supreme Court, February, 1926.              [Vol. 126

assigned to the said Phelan all his interest as remainderman in the securities described in the 5th clause of said last will and testament of Frances M. Hoyt, which securities were then in the hands of the Newport Trust Company, which had been appointed trustee under the said 5th clause of the will of Frances M. Hoyt, in the place of William A. Duer, named therein as trustee, who had died prior to the death of the testatrix.

On the same 28th day of May, 1906, Phelan and Van Rensselaer executed an instrument in writing by which it was declared that the assignment and transfer of said securities was a collateral security for the payment of the said promissory note, and not absolute, and that the same were to revert to the said Van Rensselaer, upon the payment of the promissory note and interest. The said James J. Phelan died in 1908 without having received any payment on account of the said promissory note, except a few installments of interest, leaving a last will and testament which was duly probated and by which James J. Phelan, James F. Phelan and John M. Phelan were appointed the executors thereof.

The Van Rensselaer note was not specifically bequeathed by the Phelan will and became a part of the residuary estate, and was not regarded as of much, if any, value.

The affidavit of the executors in the transfer tax proceeding stated that the note was uncollectible, and of no value. On the judicial settlement of the accounts of the executors, in which all the Phelans were represented by attorneys, the said note was described by the executors as " a very doubtful asset."

When the securities of the estate were surrendered and allocated in trusts, the Van Rensselaer note was not included and was placed in a list entitled " Securities still on hand."

In about the month of June, 1924, one of the executors of the will of James J. Phelan, acting for himself and his coexecutors, put this promissory note and the said assignment of securities in the hands of a broker, whose business was " making loans and selling remainder interests in estates." This broker endeavored to sell the note and assignment to the Newport Trust Company, the trustee under the said Hoyt will, and the custodian of the assigned securities, but without success. The executors then employed this same broker to find a purchaser for said note, and because of the difficulty of marketing such an asset paid the broker a retainer of $150.

Thereafter the broker offered the note to dealers in such securities in New York, Philadelphia, Boston and Brooklyn, but failed to sell the same or to obtain any offer therefor. Finally the broker began negotiations with Mr. Holden, the president and principal

owner of the plaintiff, which negotiations continued for two or three months, during which time Mr. Holden, acting for the plaintiff, made investigations as to the facts regarding the said note and assignment and the laws relating thereto and bearing upon the question of their validity and value. Finally, after offers and counter-offers, by one of which the executors of the Phelan will, acting through John J. Phelan, one of their number, offered through the said broker to sell the note and assignment to the plaintiff for the sum of $10,000, while the plaintiff offered to buy for the sum of $7,000, and finally a compromise was reached by which the plaintiff agreed to pay $8,500 and on December 12, 1924, the three executors executed and delivered to the plaintiff an assignment of said note, together with the assignment of John A. Van Rensselaer's interests in said securities, and the plaintiff paid the said executors therefor the sum of $8,500 and became the owner of all the interest of the said James J. Phelan estate in the said promissory note and the amounts due thereon, together with the collateral security that Van Rensselaer had given to James J. Phelan.

After this action was commenced, the life beneficiary of the trust, Mrs. John K. Van Rensselaer, died and the plaintiff now seeks a judgment declaring it to be the owner of the said promissory note and collateral security by virtue of the said assignment of the Phelan executors.

The Phelan heirs and residuary legatees now claim that the sale of the note and collateral to the plaintiff for $8,500 was for a grossly inadequate consideration, and that equity should not uphold the transaction. The amount due on the note is about $29,000, calculating straight and not compound interest, and much more if the interest is compounded. I think, however, that it cannot be said that the bargain was an unfair one or that under the circumstances the consideration was grossly inadequate. It soon developed, as no doubt the plaintiff had anticipated, that its claim under the note and assignment would be contested by both Van Rensselaer and the Phelan heirs, and this, no doubt, was an important factor, taken into consideration by plaintiff in making the purchase for the sum of $8,500.

No interest has been paid on the note for seventeen years; the life tenant of the trust was still living; the note had been declared of little, if any, value by the executors of the James J. Phelan will; there was a question whether the transaction took place in Rhode Island or in New York, and if in the latter State, the probability of the note being invalid and uncollectible because of the usurious rate of interest, and whether the transaction was to be controlled

Supreme Court, February, 1926. [Vol. 126

by the law of New York or the law of Rhode Island; the plaintiff took the chance of having to meet the claim which is now being made by the defendant Van Rensselaer, that the transaction was unconscionable on the part of James J. Phelan; besides, the executors, who presumably knew as much about the transaction and the value of the note as the plaintiff, offered to sell it to it for $10,000, only $1,500 less than it paid therefor.

In view of all these circumstances, I find that the consideration paid by the plaintiff to the Phelan estate for the note and assignment of securities was not grossly inadequate, but under the circumstances was reasonable and fair, and that the plaintiff, by the said assignment of December 12, 1924, acquired all the rights and interests of the Phelan estate in and to the said promissory note and the collateral security, and that the Phelan heirs have no interest therein.

The defendant John A. Van Rensselaer contends that the transaction between him and the said John J. Phelan out of which grew the note in question, took place in the city and State of New York and not in the State of Rhode Island, and that, therefore, the note is invalid and not enforcible because usurious, and further that regardless of where the transaction occurred, it was an unconscionable contract and, therefore, void, and these defenses present the serious questions affecting the plaintiff's right to recover.

The undisputed facts respecting the loan by Phelan to Van Rensselaer are as follows:

Both of them were residents of New York city; the lawyer who negotiated the loan and represented Phelan was a New York lawyer with his office in New York city; the application for the loan was made in that city, and there the minds of the parties met upon all the essential elements of the transaction, and there the note, assignment and agreement were signed and executed by Phelan, and there also the money was paid by Phelan's lawyer to Van Rensselaer.

Whether the papers were signed by Van Rensselaer in New York city is in dispute, but the greater weight of proof on that question is in his favor. He testified positively that he signed the papers in New York city in Mr. Shipman's office, and that the next day he went to Newport, at the request of Mr. Shipman, for the purpose of being identified by the trustee, the Newport Trust Company.

It appears on the face of the papers that Gardner, a Newport attorney, who represented Shipman and his client, Phelan, witnessed the signature of Van Rensselaer to both the assignment and agreement which accompanied the promissory note, and also acted as

Misc. 534]                    Supreme Court, February, 1926.

a notary public in taking the affidavit of said Van Rensselaer to the fact that he had not sold or assigned his interest in said securities, and Gardner testified that he had no doubt that all these papers were " executed on that day " in Newport.

On cross-examination Mr. Gardner testified as follows: " Q. Now, Mr. Gardner, as a notary public in 1906, which is nineteen years ago and over, do you know whether you would at that time have taken a man's affidavit if he came to you and said, ' That is my signature and I swear to the contents of that? ' A. I don't understand your question. Q. If a man wrote his signature in advance before he came to you and said, ' That is my signature; I swear to it,' you would have taken his affidavit, would you not? A. Yes. Q. And in witnessing a man's signature, if a man came to you with his signature already on the paper and said, ' That is my signature,' you would have witnessed it, would you not? A. It would depend upon the man somewhat — the person. I would require to be satisfied he was the person he represented himself to be. Q. And if you were satisfied he was the person whose name was on the piece of paper, and he acknowledged that as his signature, you would have signed it as a witness? A. You mean, I presume, I would not have insisted on the signature being written in my presence? Q. Yes, that is perfectly correct, is it not? A. Yes."

So that on the question as to where the note and other papers were signed by Van Rensselaer we have his positive testimony that he signed them in New York city the day before he went to Newport, and Gardner's testimony that the papers which he signed as a witness and notary public, not including the note, were " executed " in Newport, and his admission that he would have signed the papers as a witness and notary public even if they had been previously, and not in his presence, signed by Van Rensselaer, if he were satisfied as to his identity and the genuineness of the signature that he witnessed.

As before stated, James J. Phelan signed and executed all of the papers in New York city, and not only that, he acknowledged the receipt and delivery of the note and the assignment of Van Rensselaer's interest in the trust fund; and Van Rensselaer testified that he saw all the papers in Shipman's office the day before he went to Newport, and that they then bore Phelan's signature, and that thereupon in Shipman's office he signed the note, assignment and agreement.

There was nothing in the testimony, appearance or manner of Van Rensselaer to suggest that he was testifying falsely, and in view of his positive testimony and the rather uncertain testimony

of Mr. Gardner I must find that the papers were all signed by both parties in New York city, and delivered to Phelan's lawyer, Shipman, the day before they were taken to Newport; and this fact, together with the undisputed facts already stated, lead to the conclusion that the transaction is to be construed and governed by the laws of the State of New York.

Even though the papers had been signed by Van Rensselaer in Rhode Island it seems to me that the other and uncontested facts as to the negotiations, the meeting of the minds, the settlement of the terms, the execution of the papers by Phelan, and the payment of the money, all in the city of New York, make it a New York contract, subject to the laws of this State. (*Hooley* v. *Talcott,* 129 App. Div. 233; *Winward* v. *Lincoln,* 23 R. I. 476; *Wayne County Savings Bank* v. *Low,* 81 N. Y. 566; *Union National Bank* v. *Chapman,* 169 id. 538; *N. Y. Terra-Cotta Co.* v. *Williams,* 102 App. Div. 1.)

Regardless of where the contract was made, whether in New York State or in Rhode Island, it should not be enforced by a court of equity of this State because of its unconscionable character. While there is no statutory inhibition in Rhode Island against an agreement for a higher rate of interest than six per cent, the courts of that State, as of other States, protect parties against unreasonable, extortionate and oppressive rates of interest imposed upon people who, under the stress of great and immediate need, enter into such contracts. In the case at bar the promissory note provides for interest at the rate of ten per cent per annum upon the principal sum, and the same rate of interest upon all installments of interest in arrears until paid. Counsel for the Phelan heirs have computed the interest now due on the said note for $14,000 as $44,542.50. Other calculations have been made by other parties to the action, based upon different theories. Whatever may be the correct method of calculating the interest, I am holding that the agreement between Phelan and Van Rensselaer was unconscionable and void, because Phelan exacted and wrote into the promissory note an unreasonable, extortionate and oppressive rate of interest, and to uphold such a contract would be contrary to the law of Rhode Island as well as in conflict with the law and public policy of the State of New York.

In the cases of *Brown* v. *Hall* (14 R. I. 249) and *Means* v. *Anderson* (19 id. 118) the courts of that State have held that although there is no statute limiting the rate of interest to which parties may agree, yet the courts will scrutinize agreements between lender and borrower. In the *Hall Case* (*supra*) the court said: " We think it may further be said that negotiations for loans are watched

by the courts with a special scrutiny, because the necessitous borrower is so often at the mercy of the extortionate and relentless lender. A few cases may be cited to illustrate this. The case of *Sime* v. *Norris* (8 Phila. 84) resembles the case at bar. There the defendant gave his note for $4,125, payable in thirty days, with interest monthly in advance until paid, at the rate of two and one-half per cent a month, the interest, if not paid, to become a part of the principal and be compounded. The note was given in California in 1864. In a suit upon it in the Supreme Court in Pennsylvania in 1871, when the note, with interest compounded according to its terms, amounted to $26,643.54, Judge SHARSWOOD held that the stipulation for interest was unconscionable and deceptive, and allowed interest at ten per cent only, the ordinary legal rate in California. In the case at bar the note, as we construe it, does not call for compound interest, but each monthly installment carries simple interest, until paid, at the rate of five per cent a month. It is not so deceptive as the California note, the interest not being compounded, but nevertheless it is very deceptive; for no mind, unaccustomed to figures, would conceive without calculation the prodigious rapidity of its increase, if permitted to run. Such a note grows like a banyan tree, generating a new stem every month, until it becomes an interest-bearing forest, incessantly multiplying and accumulating its increments."

In the *Means Case (supra)*, another Rhode Island case, the *Hall* case was approved and the borrower was permitted to redeem certain property that had been pledged as security for a loan upon payment of the loan with six per cent interest. The effect of these Rhode Island decisions is that equity will avoid usurious contracts even in the absence of statute law against usury.

The contract between James J. Phelan and John A. Van Rensselaer was contrary to the public policy of the State of New York on the subject of interest on loans. The law limiting the rate of interest to six per cent per annum and providing penalties for its violation has established the policy of the State, and the note and the assignment of securities in question, being offensive to that policy, their enforcement should not be decreed here, no matter where they may have been made and executed.

Judgment will be given in favor of the defendant Van Rensselaer, dismissing the plaintiff's complaint upon the merits and dismissing the claims of the Phelan heirs. The claims of Hurd and Kennedy against Van Rensselaer are not questioned and are allowed.

Findings and judgment to be settled on notice, at which time I will hear counsel on the question of costs.