GERTRUDE P. BROWN and Others, Respondents, Appellants, *v.* JAMES T. PHELAN and Another, Individually and as Trustees, etc., of JAMES J. PHELAN, Deceased, Appellants, Respondents, Impleaded with ELIOT P. PHELAN and Others, Respondents, Appellants, and JOHN J. PHELAN, Individually and as Trustee, etc., of JAMES J. PHELAN, Deceased, and Others, Defendants.*

First Department, April 27, 1928.

Executors and administrators — action charging executors and trustees with defalcation of coexecutor and trustee — defaulting executor was permitted by his coexecutors to retain possession of securities and other property of estate and he stole same — executors sought to be surcharged contend that they were passive executors — evidence shows that they were active — said executors are liable for defalcation — promissory note held by estate was sold for much less than its face value — executors not chargeable with difference in view of fact purchaser, after long litigation, will be able to collect only part of note.

In this action it is sought to charge two executors and trustees with the defalcation of their coexecutor and trustee. The evidence shows that the two executors permitted their coexecutor to retain possession and control of securities of the estate and of other property, both personal and real, and that he stole the property intrusted to his possession. The contention of the executors sought to be charged with defalcation that they were merely passive and not active executors of the estate, cannot be sustained under the evidence. It appears

---

* Affg. 130 Misc. 590.

that said executors signed the inventory for the purpose of transfer tax and signed a verified account of their proceedings in 1913, and otherwise actively participated in the administration of the estate, and that they made an affidavit upon the sale of a promissory note held by the estate, in which they stated that they were the executors and trustees duly appointed, qualified and acting by virtue of the will of the testator.

Under the circumstances, it is held that they were active executors and trustees and are chargeable for the defalcation of their coexecutor upon the ground that they were grossly and inexcusably negligent in permitting him to retain possession and control of the estate, especially in view of the fact that on an accounting proceeding in 1913 it was clearly demonstrated that the defaulting executor was either a careless representative or a crook.

The testator held a promissory note of $14,000 which was made in Rhode Island and carried interest at the rate of ten per cent per annum. This note was secured by collateral. When the amount due on the note, including the principal and interest, reached the sum of $58,000, the executors sold the same to a corporation for much less than the face value. Said corporation instituted an action on the note and after protracted litigation was partially successful and may subsequently recover an amount considerably larger than it paid for the note. Under the circumstances, it cannot be said that the note was an asset, the value of which was free from doubt, or that the executors acted improperly in selling it for a sum much less than its face value.

McAvoy, J., dissents, with memorandum.

CROSS-APPEALS from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 31st day of October, 1927.

The defendants James T. Phelan and another appeal from all of said judgment except in so far as it adjudges and decrees that said defendants are held liable to the estate of James J. Phelan, deceased, for the sum of $3,315.31, representing a part of the proceeds of the sale of a certain promissory note made by John A. Van Rensselaer to decedent.

The plaintiffs and the defendants Eliot P. Phelan and others appeal from said judgment in so far as it fails to hold the defendants James T. Phelan and John M. Phelan liable to the estate of James J. Phelan, deceased, and to surcharge the said defendants by reason of the sale of said Van Rensselaer note for the difference between the price received by the representatives of said estate and the value of said note at the time of sale.

*Edward K. Hanlon* of counsel [*Beekman, Bogue, Clark & Griscom,* attorneys], for the plaintiffs, respondents.

*Henry M. Stevenson* of counsel, for the defendants, appellants.

*Francis X. Dineen* of counsel, for the defendants, respondents.

*Dominic B. Griffin* of counsel [*Peter P. Smith* and *Frank V. Smith* with him on the brief; *Smith, Reiher & Griffin,* attorneys], for the respondent, appellant, Eliot P. Phelan.

MERRELL, J.   James J. Phelan died August 3, 1908, leaving an estate in excess of $1,000,000.   He left a will, but it appears to have been so inartistically drawn that many of its provisions were invalid.   The will was not satisfactory to the widow and on December twelfth following the death of the testator the widow brought action for admeasurement of dower and two days later brought a second action to have the will declared invalid.   On March 9, 1909, the three executors and trustees under the will brought an action against the estate and others to obtain a judicial construction of the will.   All three of these actions were brought in the Supreme Court and resulted in a compromise being entered into and a judgment entered on June 17, 1909.   The judgment practically rewrote the testator's will.   The testator was twice married.   He left by his first marriage two sons, John J. Phelan and James T. Phelan, aged respectively thirty-one and thirty years.   As the result of his second marriage he left six children, four daughters, all plaintiffs herein, and two sons, Robert E. Phelan, one of the plaintiffs, and Eliot, who was named as a party defendant owing to the fact that at the time of the commencement of the action he had not reached his majority.   Testator's second wife was the widow referred to as Marie Phelan.   Under the will as modified by the judgment, the executors and trustees were directed to pay to the widow $10,000 a year for life and to set aside securities of the value of at least $200,000, "but always to be sufficient to secure the payment of said ten thousand dollars a year."   It is further provided by the judgment that the principal of the securities set apart for the widow should vest in the testator's children, subject to the payment of the widow's annuity and should be distributed and paid to the children upon the widow's death.   A like provision for an annual income of $450 was made for the benefit of one Elizabeth Foren, now the defendant Elizabeth F. Day.   Except as to the two funds and certain specific legacies the judgment directed that the entire estate should be divided into eight equal parts.   One of said parts was directed to be set aside for each of the four daughters in trust for life, with remainder over.   One of the eight equal shares was provided to be set apart to each of the sons, said share to be held in trust until the son reached his majority, when it was to be paid over in full to the son.   At the time of the testator's death the sons by the first marriage were of full age.   Robert and Eliot were minors.   Robert reached his majority in 1909, but Eliot did not become of age until July 1, 1925.   Marie Phelan, testator's widow, died July 31, 1924, and the fund for her benefit thereupon became immediately distributable into the eight equal shares to the four sons and the four daughters of the testator.   An

First Department, April, 1928.            [Vol. 223

account has been filed in the present action and thereby it appears that there were allocated to produce the annual income to the widow by the trustees the sum of $260,000 in securities, which securities should have been distributed immediately upon the death of Mrs. Phelan among the eight children. No such distribution was made and it later developed that all of the securities had been permitted by the defendants James T. Phelan and John M. Phelan to remain in the exclusive possession and under the control of their cotrustee, John J. Phelan. It also appeared from the account filed in the present action that a trust should likewise have been and probably was set up for Elizabeth Foren to yield $450 a year; that while she continued to receive the income at the stipulated rate until the latter part of 1924, the securities which may have been set aside for said fund were stolen by John J. Phelan. It also appears from said account that there was distributed outright to the three older sons, James, John and Robert, or for their account, an aggregate of $250,346.83, and that trusts for the other five children, Eliot and the four daughters, were set up by mortgages and mortgage certificates guaranteed by the New York Title and Mortgage Company of the face value of $209,000. All of these mortgages appear to have been stolen by John J. Phelan in the years 1920 and 1921, but by an action brought against the New York Title and Mortgage Company by the cotrustees the estate has recovered from said company the proceeds of said mortgages and mortgage certificates. That case passed through this court on appeal, and we upheld the right of the trustees to recover from the mortgage company said moneys. (*Phelan* v. *New York Title & Mortgage Co.*, 219 App. Div. 712.) The account shows that the remaining assets having considerable value, appear never to have been allocated to any of the trusts or distributed to the legatees. They were largely of the stock of the James J. Phelan Company which held real estate of the value of $500,000. Except for such part thereof as may have been liquidated and invested in the guaranteed mortgages and certificates above referred to, it is believed that the said real property and the miscellaneous assets were sold and the proceeds entirely diverted by said John J. Phelan. The evidence further clearly shows that the defendants James T. Phelan and John M. Phelan, while qualifying as executors and trustees under the will, *and although they signed, verified and filed an inventory* for taxable transfer purposes soon after the entry of the judgment in the actions brought by the widow and by the trustees, *and while in 1913 they signed and verified an account of their proceedings and actively participated in the administration of the estate,* nevertheless, negligently allowed John J. Phelan to retain the

exclusive control of the assets of the estate. The accounting in 1913 clearly demonstrated mistakes on the part of said John J. Phelan which branded him either as a careless representative or a crook and which should have directed the attention of his cotrustees and invited their active diligence and inquiry into his acts as trustee. I think there is absolutely no defense whatever to the contention of the plaintiffs that the defendants as trustees are liable *in devastavit* for the acts of their cotrustee, John J. Phelan. Apparently they relied absolutely on his integrity and took no steps to post themselves in the securities of the estate. The defendants James T. Phelan and John M. Phelan cannot be relieved from liability by the plea that they were mere passive trustees having no control or management of the trust estate. The record clearly negatives any such claim and establishes their gross and inexcusable negligence in permitting the looting of the estate by their cotrustee. They are legally responsible for his acts. In *Adair* v. *Brimmer* (74 N. Y. 539) the Court of Appeals said (at p. 566): " It is not necessary for the purpose of establishing Mr. Brimmer's liability for these advances, to show his express consent to them. Where an executor *by his negligence* suffers his co-executor to receive and waste the estate, *when he has the means of preventing it by proper care*, he is liable to the beneficiaries under the will for the estate thus wasted." (Italics are the writer's.) Again in *Earle* v. *Earle* (93 N. Y. 104) the Court of Appeals (at p. 113) said: "A trustee should act in relation to a trust property with reasonable diligence, and in case of a joint trust he must exercise due caution and vigilance in respect to the approval of, and acquiescence in, the acts of his co-trustees, for if he should deliver over the whole management to others, and betray supine indifference or gross negligence in regard to the interests of the *cestui que trust*, he will be held responsible." And (at p. 110) the Court of Appeals, in the same case, wrote: " On these points we concur with the conclusions of FREEDMAN, J., before whom the action was tried, and whose opinion delivered at the Special Term was adopted by the General Term. *Mr. Earle by accepting the office of executor, and qualifying as such, also accepted the trusts conferred upon the executors. He rendered his account as executor, wherein he charged himself jointly with his co-executor and executrix with the funds of the estate*, and was by the decree of the surrogate charged therewith, and directed as to their disposition." (Italics are the writer's.)

Each of the three executors and trustees qualified as such. They all united in the making of the inventory, in signing its schedules, and in verifying the same, and must have known, or should have known, what the inventory contained. The importance of such

circumstance was stressed by the Court of Appeals in *Matter of Myers* (131 N. Y. 409) where that court said (at p. 420): " The executors were all properly charged with liability to account for and pay over the income of the trust estate, under the proofs in this case. *They all qualified; they all united in causing the inventory to be made;* they must all have known of the condition of the estate as disclosed by the inventory; two of them, certainly, had actual knowledge of the use which was made of the property; if the others did not know, they could have known by the exercise of ordinary care and vigilance that the funds had been diverted from the usual course of trust investments and were employed in the business of the new firm." (Italics are the writer's.)

As to the Van Rensselaer note, the court refused to grant the contention of the plaintiffs that the trustees should be held liable for the full value of such note, less what was actually received thereon, and held the trustees only liable for $3,315 and some cents, which was the difference between what was actually received on the sale of the note and what was paid over by John J. Phelan therefrom. This Van Rensselaer note was given May 28, 1906, by John A. Van Rensselaer and delivered to the testator. The face of the note was $14,000 payable one year after date, with interest at the rate of ten per cent per annum, payable quarterly in advance until said principal was paid, whether at or after maturity. All installments of interest in arrears were to bear interest at the rate aforesaid until paid. The note appears to have been given at Newport, R. I. At the same time Van Rensselaer delivered two instruments constituting an assignment as collateral security. These instruments assigned Van Rensselaer's remainder interest in a trust fund created under the will of one Frances M. Hoyt. Van Rensselaer's mother was the life beneficiary and Van Rensselaer himself was the remainderman of the fund. After the note was given, $1,800 was paid in interest, but no other interest was paid, nor was any part of the principal paid. After the death of James J. Phelan the note remained in possession of the executors until December, 1924, when there was due on the note the principal thereof, $14,000, together with $44,000 of interest, making in all a total of $58,000. The value of the collateral security was in excess of $81,000. John J. Phelan, the defaulting trustee, negotiated a sale of the note and collateral to a corporation known as the Westchester Mortgage Company. All three cotrustees participated in the sale and joined in the execution of the document, James T. Phelan making an affidavit at that time that he was a trustee and that he and his two associates, John J. and John M., were actively trustees of said

estate. In negation of the claim of the defendants, appellants, that they were merely passive trustees this affidavit of the defendant James T. Phelan in connection with the so-called Van Rensselaer note to the Westchester Mortgage Company, verified December 13, 1924, is illuminating. In this affidavit the defendant James T. Phelan swore as follows: " I am one of the *executors and trustees* duly appointed, qualified, *and acting* by virtue of the Last Will and Testament of James J. Phelan, * * *. James T. Phelan, John J. Phelan and John M. Phelan were duly appointed Executors and Trustees under said Will on or about the year 1908, *and have since continued as such Executors and Trustees,* and still have power to act as such, and have power and authority to sell and assign all the right, title and interest in the aforesaid assets of which James J. Phelan died the owner. *Said executors and trustees* have agreed to sell said note * * *. Deponent makes the foregoing affidavit *knowing that the statements therein contained are relied upon by Westchester Mortgage Company in purchasing the note and securities hereinbefore mentioned,* * * *."  (Italics are the writer's.)

After the Westchester Mortgage Company received the note it brought action in Westchester county to obtain a declaratory judgment upon the note. The justice presiding at the trial held the note to be void for usury and unconscionable, but held that the transaction between the trustees and the purchaser was valid and binding upon the Phelan estate. (*Westchester Mortgage Co.* v. *Grand Rapids & Ionia R. R. Co.,* 126 Misc. 534.) An appeal was taken to the Appellate Division, Second Department, where the judgment of the trial court was modified, the Appellate Division holding the note to be valid and enforcible under the laws of Rhode Island to the full extent of the principal and interest therein provided, but affirming the lower court as to the validity of the transaction between the estate and the Westchester Mortgage Company. (219 App. Div. 733.) Upon appeal to the Court of Appeals the judgment of the Appellate Division was modified to the extent of holding that while the note was valid under the laws of the State of Rhode Island the amount of principal and interest payable thereon must be determined by the courts of that State, being there solely enforcible. (246 N. Y. 194.) The trial court below held that the very fact that such prolonged litigation was necessary to sustain the validity of the note, as free from the taint of usury, indicates that it was not an asset, the value of which was free from doubt; that the purchaser may subsequently succeed in realizing the sum of about $28,000 after prolonged litigation did not indicate that the trustees were so grossly negligent in the matter as to charge them with a deficiency by reason of the sale at a price which circumstances developed was

inadequate. (130 Misc. 590, 596.) I think the court was right in such determination. I cannot see how it can be said that the trustees in disposing of the note which an eminent justice of the Supreme Court held was of no value whatever for $8,500 in cash can be said to be negligent, although finally the note was held by the Court of Appeals to be good in the State of Rhode Island.

The interlocutory judgment appealed from should be in all things affirmed, with costs to the plaintiffs, respondents, against the defendants James T. Phelan and John M. Phelan, individually and as trustees under the last will and testament of James J. Phelan, deceased.

DOWLING, P. J., FINCH and PROSKAUER, JJ., concur; McAVOY, J., dissents.

McAVOY, J. (dissenting). These trustees who have been directed to account for the peculations of their cotrustee occupied to him and to this estate, with the acquiescence of their *cestuis que trustent*, the state of passive trustees who cannot be held responsible for what the defaulting trustee has received and converted. They have never known of or assented to the misapplications. They have not consented to the waste. They have neglected no duty consequent upon their knowledge of a misapplication accomplished or projected. These are necessary grounds of liability, not found in the proof.

The judgment should, therefore, be reversed except as to the proceeds of the Van Rensselaer note.

Judgment affirmed, with costs to the plaintiffs, respondents, against the defendants James T. Phelan and John M. Phelan, individually and as trustees, etc., of James J. Phelan, deceased.