In the Matter of the Estate of EUGENE J. FLOOD, Deceased.*

Surrogate's Court, New York County, August 13, 1928.

---

* See, also, 127 Misc. 797.   Supplemental opinion, 133 Misc. 77.—[REP.

*Matthew J. Wheelehan,* for the executors and trustees.

*Isidor Enselman,* for the objectant Murray.

*Arthur T. O'Leary,* for the objectant Brady.

FOLEY, S. I have carefully considered the briefs of counsel, the report and opinion of the referee, and the testimony in this contested accounting proceeding. The report of the referee will be confirmed with the following modifications: In my original decision in this proceeding construing the will I held that the discretion vested in the executors and trustees to support the life tenant of the trust was not absolute, but subject to scrutiny as to possible fraud or diversion. I further determined that by the use of the words " used," " applied," " maintained," and " supported " in the will the trustees were charged with the duty of seeing that the funds were properly applied to the support of the life tenant and were not used in violation of the trust for the benefit of some other person. (*Matter of Flood,* 127 Misc. 797.) That decision was affirmed without opinion by the Appellate Division (216 App. Div. 711), and by the Court of Appeals (243 N. Y. 598). It is futile, therefore, to discuss the very points established as the law of this estate, which are now argued anew by counsel for the executors and trustees. In the referee's opinion and report he has analyzed the method adopted by him in arriving at the surcharge of $4,218.68 against the executors. This surcharge was based on an excessive payment amounting to $208.33 per month for the twenty and one-quarter months of the period of contribution to the life tenant. He arrived at the sum of $208.33 as the amount of monthly surcharge, by deducting from the sum of $433.33 (the average monthly amount actually paid to the life tenant) the sum of $225 per month, which was the estimate under oath of Mrs. Flood, the life tenant, and Mrs. Ryan, one of the executors, as the cost of maintenance in the original application of the temporary administrator for authority to pay the life tenant such an allowance. In this connection it should be pointed out that in the application by the temporary administrator the estimated monthly cost of support was not $225, but really $100, which was stated by Mrs. Ryan, the executor, on such application to be the amount necessary for food and household expenses. The remaining items of the total of $300 were for rent, which was afterwards eliminated as an element of expense, and for medical expenses, which were paid directly by the executors, and for nurses' services. With the

referee's conclusion, however, I am unable to agree. There is every indication that the payments alleged by the executors to have been made for the maintenance of the life tenant were excessive, and that the trust funds were diverted and used for the personal benefit of both executors. But I am compelled to hold that the surcharge against them must be based upon proven items of improper disbursement and not upon the excess over the reasonable cost of maintaining the beneficiary of the trust. Special circumstances, not present here, may in some cases require the application of the latter alternative in order to correct fraud against the beneficiaries The surcharge by the referee of $4,218.68 will, therefore, be eliminated and the referee's report modified by substituting the following specific surcharges:

(1) The referee properly held that Anna Ryan was limited to the sum of $75 per month for her compensation for the care of her mother during the disputed period. Mrs. Ryan was an executor and trustee under the will. In her affidavit on the temporary administrator's application she stated that $75 was reasonable for her services rendered individually as caretaker for her mother, the life tenant. As soon as she became an executor, however, she and the other executor increased this allowance to her, without judicial approval, to the sum of $100 per month. Any attempt to enlarge the amount originally fixed should have been the subject of an application to this court. (Surrogate's Court Act, § 212.) The payment of additional compensation for individual services rendered by an executor or trustee is discouraged to the greatest degree by the courts. Where extraordinary personal services outside of the trust duties are rendered, compensation has sometimes been allowed, but the right to payment and the amount thereof have always been the subject of the strictest judicial scrutiny. This rule has been based upon the adversity of interest in the same person between his capacity as trustee and his capacity as a paid employee. The temptation to exact excessive or unauthorized pay is too great to permit the representative to fix his or her own compensation. In his comprehensive opinion in *Matter of Popp* (123 App. Div. 2) Mr. Justice GAYNOR reviewed the authorities applicable to this question. He pointed out the importance of the rule of strict scrutiny in the allowance of extra compensation and the intolerable abuses which would arise if not properly controlled. (See, also, Twyeffort's N. Y. Estates & Surrogates [2d ed.], 866.) I hold, therefore, that the referee properly fixed the sum of $75 per month as the reasonable compensation of Mrs. Ryan, and that the executors are liable for the excess amount paid to her. The referee's finding of fact No. 7 in this respect is correct. His conclusion of law No. 2 will be

modified by a direction that the executors are specifically surcharged with the sum of $1,057.50, being the difference between the amount actually received by Mrs. Ryan, $3,200, under finding of fact No. 2, and the sum of $2,142.50, which was computed at the rate of $75 a month for the period mentioned in said finding.

(2) The referee's finding of fact No. 4 is confirmed, except the amount $1,095 is a clerical error and should be $1,093 in accordance with the computation set forth in his opinion. His conclusion of law No. 4 will be modified by surcharging the executors with the said sum of $1,093. The referee correctly held that the amount was fraudulently and illegally expended. The method of computing that amount is clearly understandable from his opinion and report, and his mode of computation is correct. The item of $15 per week, which was the basis of his surcharge, was supplied by the testimony of the executor McNulty, and was referred to in his counsel's brief before the referee in the list entitled " Average weekly Expenses of Bridget Flood." Interest at the legal rate on each of the items of surcharge will be allowed from the respective weekly dates of disbursement. Only one other point requires discussion. It is argued by counsel for the executors that the objectants acquiesced in the trustees' administration of the trust estate, and that they knew that the life tenant was receiving the sum of $100 a month. An examination of the pages of the stenographer's minutes cited by counsel fails to support his contention. The weight of evidence establishes that neither the allowance of $100 a month nor the amounts actually paid to Mrs. Ryan for services were ever disclosed to the objectants, and there is no inference of acquiescence by them. The total surcharge by me, therefore, is the sum of $2,150.50, being the total of the aforesaid items of $1,057.50 and $1,093. In the exercise of discretion, and because of the misconduct found by the referee and by the surrogate, and because of the fraudulent diversion of the trust funds by the executors, commissions will be denied to them. (*Matter of Bushe,* 227 N. Y. 85, 90; Jessup Redf. Sur. [1925 ed.] 1627.) The expenses of the reference will be charged against the executors and trustees personally. There remains undisposed of the question of the allowance of the personal claims of each of the two executors, which must be proven before the surrogate. (Surrogate's Court Act, § 212.) Hearings on these claims have been twice set, but, by reason of the absence of the executors, or of the witness, or the alleged illness of one of them, it has been impossible to complete the proof.

A decree may, therefore, be submitted confirming the referee's report, with the foregoing modifications, settling the account

accordingly and reserving for determination by a supplemental decree the issue as to the personal claims of the executors. Submit such decree on notice.

On application for reargument.

The application for the reargument of my decision in the accounting proceeding in this estate is denied. Certain minor errors in the referee's report in the computation of the various amounts, which were adopted by me as a basis of surcharge, may be corrected in the proposed decree herein.

(1) With reference to the surcharge based upon the improper and excessive payment to Anna Ryan for personal services rendered by her, the referee correctly found that she was paid the sum of $25 a week for 128 weeks, a total of $3,200. This finding of fact and his conclusion of law and the surrogate's determination thereon were based upon her own testimony in several parts of the record but particularly at page 488 of the stenographer's minutes, volume I. She testified that she had received the sum of $25 a week from the date of death of her brother, the decedent herein, November 3, 1921, to April 19, 1924. Counsel for the applicant misstates the date of death of the decedent. A count of the weeks shows that the referee's basis of 128 weeks was accurate, and the actual period was a slight fraction of a week over the number of weeks found by him. In the face of the record there is nothing to sustain the present contention of counsel for the executors that this amount was not received by her during the period of the temporary administrator's tenure. The referee's computation was, therefore, properly based upon the receipt of $25 per week during the entire period mentioned above. In computing the allowance to her, based upon the reasonable compensation found by the referee and approved by the surrogate — $75 per month — the referee properly took the period from November 3, 1921 (the actual date of death set forth in the probate petition of the executors), to April 19, 1924, the last date of payment. The result of his computation, however, was incorrect in one respect. An examination of the specific period shows that there were twenty-nine and one-half months, which at the rate of $75 per month amounts to $2,212.50, and the difference between the latter amount and $3,200 gives $987.50 as the proper surcharge on this ground against the executors and trustees, instead of $1,057.50. This error may, therefore, be corrected in the decree.

(2) A further examination with respect to the other surcharge of $1,093 in my original decision shows that basis is correct, although the amount should be increased slightly instead of diminished.

There was an error in favor of the executors in this computation. The exact period of the surcharge was 88 weeks, one week more than the number found by the referee, and the decree may include the corrected amount of the surcharge, $1,108.

(3) My original decision also confirmed the entire report except as specifically modified by me.

The referee's findings and conclusions with respect to the fifty dollars directed to be repaid to Susie E. Murray, and relative to the cemetery deed, should be embodied in the proposed decree. Submit decree promptly on notice.