In the Matter of the Estate of LEO KINREICH, Deceased.

Surrogate's Court, New York County, July 18, 1930.

*Harold E. Lippincott*, for the executor.

*Emma E. Kinreich*, executrix in person.

*Harry G. Kosch* [*Harry G. Kosch* and *Milton H. Reuben* of counsel], for legatees and objectors.

*Taylor, Blanc, Capron & Marsh* [*Irving G. Idler* of counsel], for Bertha C. Schnellbacher.

*Jacobs & Blumenstiel*, for Moritz Eisner, creditor.

*Samuel Lax*, special guardian.

FOLEY, S. In this accounting proceeding objections filed to the account raised several issues, the principal one of which was the liability of the executors for continuing testator's business after his death. The referee appointed to hear and determine the issues has held that both executors are liable for the loss sustained by continuing the business. He has found that the testator was the owner of all of the stock of the corporation which conducted the business; that the corporation was solvent at the time of testator's death, but subsequently became insolvent, a receiver in bankruptcy being appointed therefor. He has accordingly surcharged the executors with the book value of the business as of the date of testator's death. The matter now comes before the surrogate on exceptions filed to the referee's report.

The exceptions to the referee's report are sustained to the extent of allowing the following deductions from the assets of the Sterling Wax Paper Manufacturing Company: From the merchandise inventory there should be deducted the difference between the sale price and the cost price of finished goods, or $3,166.17; and from the real estate there should be deducted depreciation from January 1, 1926, until September 29, 1926, or $403.13. The widow's exemption of $150 is also allowed. (Surr. Ct. Act, § 200.) The remaining exceptions are overruled. As to the liability of testator's widow, who qualified as executrix and actively managed the business, it clearly appears that in the absence of any authority in the will she must be held strictly accountable for the loss sustained in continuing the business. (*Manhattan Oil Co.* v. *Gill*, 118 App. Div. 17, 19; *Matter of Glass*, 134 Misc. 291, both citing *Willis* v. *Sharp*, 113 N. Y. 586.)

As to the coexecutor, Turkus, the contention that he took no active part in the running of the business and, therefore, should not be held liable for the loss, cannot be sustained either by the testimony or as a matter of law. In his opinion the referee calls attention to the testimony of the executor that he received a financial statement which showed the net worth of the corporation to be

approximately $39,000; that he looked over the plant of the corporation and arrived at the conclusion that it was insolvent at the time of testator's death. The referee finds, however, that the corporation was not insolvent at that time, and that as the executor, Turkus, was negligent in failing to determine its exact status and in permitting Mrs. Kinreich to operate the business and conduct the estate as though it were her own personal affair, he is equally liable with her for the loss suffered by the legatees. This finding is borne out by the testimony of the widow. It appears to be undisputed that soon after the death of the decedent the executrix was made president of the corporation at a salary of $300 per week. The payment of this excessive amount furnished a strong motive on the part of the widow to continue the business in disregard of her legal duty. (*Matter of Popp*, 123 App. Div. 2; *Matter of Froelich*, 122 id. 440; affd., 192 N. Y. 566; *Clausen* v. *Puvogel*, 114 App. Div. 455, 459; *Matter of Flood*, 133 Misc. 72, 74.) She testified that this amount of salary was determined on at a conference at which she, Mr. Turkus, the coexecutor, and Mr. Cohen, their attorney, were present, held about ten days after testator's death. She further testified that she conferred with Mr. Turkus on the figures shown in monthly statements of the business, saying, " that is the way we decided to carry on the business." The referee as the trier of the facts had opportunity to hear the witnesses, and his conclusion necessarily involved the acceptance of the truth of Mrs. Kinreich's testimony. The executors conducted the business and the executrix acted as president until the bankruptcy in January, 1929, or two years and four months after the testator's death. From the entire record it appears that the executor, Turkus, was properly held responsible with the executrix for the loss to the beneficiaries of the estate. His duty, as the developments show, was to insist that the business be sold or liquidated as soon as reasonably possible after testator's death. (*Brown* v. *Phelan*, 223 App. Div. 393; *Gould* v. *Gould*, 126 Misc. 54; *Matter of Niles*, 113 N. Y. 547; *Earle* v. *Earle*, 93 id. 104; *Croft* v. *Williams*, 88 id. 384; *Adair* v. *Brimmer*, 74 id. 539, 566; Harvard Law Rev. March, 1921, p. 483.)

That the estate held only shares of stock in the business corporation does not affect the question of the executors' liability. This question has been decided by the Court of Appeals in *Matter of Auditore* (249 N. Y. 335), the court saying: " The surrogate is not dealing with the corporation but with the value of its stock at specified times."

A further question presented on the argument before me was

whether or not the legatees Stein and Ormerod were estopped from objecting to the continuance of the business or the holding of the stock, which was a non-legal security. They were employees of the corporation and received legacies under the will, which were paid in part. But nowhere in the record is there any evidence of their having acquiesced in the holding of the stock or the running of the business by the executors. Under the rule stated in *Adair* v. *Brimmer* (*supra*, at p. 554), the legatees' acquiescence must be proved and cannot be assumed, and the legatees must be shown to have been apprised of their legal rights. I hold, therefore, that there is no estoppel against these legatees objecting to the acts complained of.

The argument that the referee should not have included the proceeds of the sale of testator's real property in the charges against the executors, is without merit. The real estate in question was devised by the residuary clause to the widow. That clause blended the real and personal estate. The devisee was also named as executrix and as such was charged with the payment of the general legacies. In paragraph 15 of the will she and her coexecutor were given the power to sell the real estate at such times and in such manner as they might deem for the best interests of the estate. I hold, therefore, that the general legacies were charged against the real estate (*Carley* v. *Harper*, 219 N. Y. 295, 301; *Brown* v. *Knapp*, 79 id. 136, 143), and the rents and expenses of the property were properly charged and credited in the account.

Pursuant to section 236 of the Tax Law (as amd. by Laws of 1924, chap. 357), and rule VIII of this court, a decree cannot be entered until the transfer tax is fixed and a proper final receipt therefor is filed. Submit such receipt and proposed decree on notice confirming the referee's report, with the exceptions above stated, and settling the account accordingly.